Alan D. Halperin, Esq.
Julie Dyas Goldberg, Esq.
**HALPERIN BATTAGLIA BENZIJA, LLP**
40 Wall Street, 37th Floor
New York, New York 10005
Phone: (212) 765-9100; Fax: (212) 765-0964
ahalperin@halperinlaw.net; jgoldberg@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

**E. GLUCK CORPORATION,**
Tax I.D. No. 13-2907195,

                              Debtor.
-------------------------------------------------------------x

Chapter 11 Case
Case No. 25-12683 (MG)

**APPLICATION FOR AUTHORITY TO RETAIN EAST WIND SECURITIES, LLC
PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, AS
INVESTMENT BANKER TO THE DEBTOR *NUNC PRO TUNC*
TO THE PETITION DATE**

TO THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      E. Gluck Corporation, the debtor and debtor-in-possession herein ("E. Gluck" or the "Debtor"), pursuant to § 327(a) and 328(a) of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), as for its application (a) requesting authority to retain East Wind Securities, LLC ("East Wind"), as investment banker to the Debtor, *nunc pro tunc* to the commencement of these case, in accordance with a certain letter agreement, dated as of November 24, 2025 (the "Agreement");

{00354102.1 / 1539-001 }

and (b) modifying the time-keeping requirements of Rule 2016-1 of the Local Rules and General Order M-447, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases ("General Order M-447"), respectfully represents:

1. This Court has jurisdiction over this application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1.

## BACKGROUND

2. On December 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. No creditors' committee or trustee has been appointed in this case.

4. E. Gluck has been in the watch business for more than six decades, operating as a designer, importer and distributor of certain proprietary and licensed brands. Its proprietary anchor is Armitron, a longstanding name in the U.S. watch market, complemented by licensed fashion brands such as Anne Klein, Nine West, and others. At its peak, the company generated hundreds of millions of dollars in revenue by supplying a wide spectrum of U.S. retail partners, including mass merchants, department stores, mid-tier chains, off-price retailers and club stores. Beyond the domestic market, E. Gluck also built international distribution through third-party distributors and maintained a meaningful presence in travel retail, including duty-free

and cruise channels.

5.  E. Gluck's business model rested on a durable combination of long-term brand licenses, strong proprietary positioning, a broad and healthy SKU variety, high-quality products and deep retail relationships, all supported by an in-house team capable of delivering design, production and distribution at scale. For many years, this mix created a stable and profitable foundation.

6.  Yet, in recent years, management recognized that traditional watches were a mature, slow-growth category, increasingly pressured by shifts in consumer behavior and the rise of smart devices. To diversify and with the goal of positioning the company for future growth, E. Gluck acquired WITHit, a company specializing in reading accessories and smartwatch and wearable-tech accessories. The strategic goal was for WITHit to extend E. Gluck's reach into faster-growing product categories, leverage E. Gluck's retail distribution muscle and create a hedge against the long-term decline of conventional watch demand due to, among other reasons, the advent and increased market share of smart devices..

7.  Unfortunately, the acquisition of WITHit did not deliver the benefits that management anticipated. The expectation was that smartwatch accessories, and the broader category of wearables, would provide a meaningful growth engine to offset the gradual decline in traditional watch demand.  However, in practice, the category proved more fragmented, competitive and difficult to scale than projected. Integration challenges, overlapping costs and slower-than-expected consumer adoption all contributed to results that fell materially short of the original business forecasts.  The end result was that not only were the anticipated synergies unrealized, but forecasted growth related to WITHit's legacy business failed to materialize such

{00354102.1 / 1539-001 }

3

that sales even trended downward from pre-merger periods.

8. At the same time, external factors compounded the challenge. The COVID-19 pandemic disrupted supply chains, tightened retail ordering, and shifted consumer demand patterns. Tariffs and freight costs spiked, further eroding already thin margins. Retail partners across channels became more aggressive in managing their own inventories, often leaning on suppliers to absorb costs and risks. Meanwhile, the traditional watch category faced mounting structural headwinds as smart devices captured a larger share of consumer attention and spending.

9. The cumulative effect is a company burdened by fixed costs and new obligations from the WITHit acquisition that are not offset by the anticipated increases in revenue, all while E. Gluck's core revenue and profitability have come under sustained pressure from macroeconomic shocks and long-term shifts in the consumer marketplace.

10. E. Gluck is seeking relief under Chapter 11 to reset its cost structure, shed unproductive obligations, and position its long-standing business for long-term stability. The Chapter 11 process will allow the company to exit the unfavorable service contracts associated with the WITHit acquisition, as well as unwind operational redundancies that never integrated cleanly with the core watch business. It will also enable E. Gluck to reject costly or underutilized leases and to restructure its Hong Kong operations into a smaller, more efficient presence that reflects the company's current sourcing needs. Further, Chapter 11 will give the company the ability to rightsize its workforce, eliminating duplicative roles and reducing fixed overhead that has become unsustainable relative to revenue, while preserving a material number of jobs into the future – a goal that is in jeopardy should E. Gluck not undertake this restructuring.

11. E. Gluck's foundations are strong and its goals are to preserve and reinforce those foundations that have served it well for decades. The company continues to hold valuable proprietary and licensed brands, including Armitron and Anne Klein, which remain trusted names in the U.S. watch market. Its retail relationships span the full spectrum of distribution and its distribution partners continue to view E. Gluck as a reliable, creative and capable supplier. With burdensome contracts and unproductive costs behind it, the company will return to a variable-cost model in line with its revenue base, its financial profile will stabilize and a leaner but sustainable workforce will be protected. With a restructured balance sheet and operating model, E. Gluck will be positioned to compete effectively in today's challenging retail environment and to achieve sustainable profitability.

12. Additional information regarding E. Gluck's business, capital structure and the circumstances leading to this chapter 11 case is contained in the Declaration of Adam Gelnick Pursuant to Local Bankruptcy Rule 1007-2 (the "Gelnick Declaration") filed contemporaneously herewith.

## **RETENTION OF EAST WIND**

13. By this Application, the Debtor seeks to retain East Wind, as its investment banker pursuant to § 328(a) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions of the Agreement, a copy of which is annexed as **Exhibit A** hereto. The Debtor also seeks to modify the time-keeping requirements of Local Rule 2016-1 and General Order M-447.

14. For the past several months, East Wind has been working with the Debtor's to design and effectuate a transaction to maximize the value of the Debtor's assets. Though many structures have been explored, ultimately, the professionals have determined that a

sale under Section 363 of the Bankruptcy Code is likely to yield the best and highest results. Pre-petition, East Wind has worked with the Debtor's management and Chief Restructuring Officer CoMetrics Partners, LLC to structure the sale and canvas the marketplace for potential purchasers. The Debtor requires the services of East Wind to perform investment banking services on its behalf during the administration of the Chapter 11 case as well. Some of the services it is anticipated East Wind would provide to the Debtor include, among others:

- assist in developing descriptive materials relating to the Company;

- assist in engaging with identified and in identifying and contacting additional prospective acquirers who might have an interest in participating in a Sale and/or a Financing;

- assist in the evaluation of interested prospective acquirers and investors and of any proposals received from any prospective acquirer or investor

- assist in structuring and negotiating a Sale and/or Financing; and

- communicate with and/or present to the Company's Board of Directors and/or shareholders regarding a Sale and/or a Financing.

15. East Wind will charge the Debtor a flat fee of $12,500 per month and a success fee equal to the greater of $750,000 or 2.5% of the Aggregate Transaction Value (as defined in the Agreement) (the "<u>Transaction Fee</u>"),[1] plus reasonable and documented out of pocket expenses.

---

[1] The Transaction Fee increases to 4% for amounts realized over $40 million. See the Agreement p.2 numbered paragraph 4.

{00354102.1 / 1539-001 }

16. Under the Agreement, East Wind agrees to customary confidentiality and indemnification provisions, including the inapplicability of an indemnification by the Debtor in circumstances involving claims arising out of the Agreement caused by its willful misconduct or gross negligence of East Wind.

17. East Wind will use its best efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in these cases.

### Retention under Section 328(a) of the Bankruptcy Code

18. Investment bankers such as East Wind do not typically charge for their services on an hourly basis. Instead, they customarily charge a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Agreement follows this custom in the investment banking industry.

19. The compensation arrangement contained in the Agreement is beneficial to the Debtor's estates because it provides certainty and proper inducement for East Wind to act expeditiously and prudently with respect to the matters for which it will be employed. East Wind's decision to advise and assist the Debtor is conditioned upon its ability to be retained in accordance with the terms of the Agreement and pursuant to § 328(a) of the Bankruptcy Code and not § 330 of the Bankruptcy Code. Accordingly, because the Debtor is seeking to retain East Wind under Bankruptcy Code section 328(a), the Debtor believes that East Wind's compensation should not be subject to any additional standard of review under Bankruptcy Code § 330 and does not constitute a "bonus" or fee enhancement under applicable law; however, as is the practice for cases within this District, under the Proposed Order, the U.S. Trustee and the Committee shall retain all rights to respond or object to East Wind's interim and final

applications for compensation (including without limitation the Transaction Fees) and reimbursement of out-of-pocket expenses on all grounds including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code.

20. East Wind does intend to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case with respect to any Transaction Fees earned, and such Transaction Fees shall be subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived).

21. As East Wind's compensation will primarily be calculated and paid based on one or more Transaction Fees, East Wind requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-1, General Rule M-447, the United States Trustee fee guidelines, and any otherwise applicable orders or procedures of the Court. Notwithstanding that East Wind does not charge for its services on an hourly basis, East Wind will nonetheless maintain records (in summary format) of its services rendered for the Debtors, including reasonably detailed descriptions of those services and will present those records to the Court in its fee applications.

22. The Debtor submits that these services are necessary to implement the plan for maximizing asset values for the benefit of E. Gluck's creditors. The Debtor believes that East Wind is well qualified to render the services required by the estate. Upon information and belief, East Wind (a) does not represent and or hold any interest adverse to the Debtor's estate or its creditors in the matters upon which East Wind is to be engaged; and (b) has no

{00354102.1 / 1539-001 }

connection with the Debtor, its creditors, or other parties-in-interest in the case, except as disclosed in the Declaration of David Kaufthal, attached hereto as **Exhibit B** (the "Kaufthal Declaration").

23. As of the Petition Date, East Wind is not owed any sums for services rendered prior to the commencement of the Chapter 11 case. To the best of the Debtors' knowledge East Wind: (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, and except as disclosed and described in the Kaufthal Declaration, neither holds nor represents any interest adverse to the Debtor and the Debtor's estate and has no connection to the Debtor or to its significant creditors or certain other potential parties-in-interest, whose names were supplied to East Wind by the Debtor.

24. Finally, in accordance with § 504 of the Bankruptcy Code, East Wind has informed the Debtor that there is no agreement or understanding with East Wind and any other party, other than an employee of East Wind, for the sharing of compensation received or to be received for services rendered in connection with this case.

## Basis for Relief Requested

25. Section 327(a) of the Bankruptcy Code authorizes a debtor to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). In addition, § 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and

{00354102.1 / 1539-001 }

9

conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, § 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted). As discussed above and in the Kaufthal Declaration, East Wind should be considered "disinterested" in accordance with § 327(a) of the Bankruptcy Code. Additionally, the Debtor believes that the terms and conditions of the Agreement are fair, reasonable and market-based under the standards set forth in § 328(a) of the Bankruptcy Code.

26.    No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that an order, in the form annexed hereto as **Exhibit C** be entered authorizing it to (a) retain East Wind as its investment banker in these proceedings, *nunc pro tunc* to the Petition Date, in accordance with the

Agreement, and (b) modifying the time-keeping requirements of Rule 2016-1 of the Local Rules and General Order M-447, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 16, 2025

        **E. Gluck Corporation**
        Debtor and Debtor-in-Possession

        By: */s/ Adam Gelnick*
            Adam Gelnick, its,
            Chief Financial Officer

Filed by:

**HALPERIN BATTAGLIA BENZIJA, LLP**

By: */s/ Julie Dyas Goldberg, Esq.*
    Alan D. Halperin, Esq.
    Julie Dyas Goldberg, Esq.
    40 Wall Street, 37th Floor
    New York, New York 10005
    Phone: (212) 765-9100; Fax: (212) 765-0964
    ahalperin@halperinlaw.net; jgoldberg@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor-in-Possession*