Alan D. Halperin, Esq.
Julie Dyas Goldberg, Esq.
**HALPERIN BATTAGLIA BENZIJA, LLP**
40 Wall Street, 37th Floor
New York, New York 10005
Phone: (212) 765-9100; Fax: (212) 765-0964
ahalperin@halperinlaw.net; jgoldberg@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

**E. GLUCK CORPORATION,**
Tax I.D. No. 13-2907195,

Chapter 11 Case
Case No. 25-12683 (MG)

Debtor.
-------------------------------------------------------------x

# APPLICATION FOR ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF COMETRICS PARTNERS, LLC, EFFECTIVE AS OF THE PETITION DATE TO PROVIDE CHIEF RESTRUCTURING OFFICER AND SUPPORTING PERSONNEL TO THE DEBTOR AND (II) GRANTING RELATED RELIEF

TO THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE:

E. Gluck Corporation, the debtor and debtor-in-possession herein ("E. Gluck" or the "Debtor"), hereby file this application (the "Application") requesting authority to retain CoMetrics Partners, LLC ("CoMetrics"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and in accordance with the terms and conditions of the engagement letter dated as of February 20, 2025 as amended April 1, 2025 (the "Agreement") to (a) provide Mr. Gary Herwitz ("Mr. Herwitz") as Chief Restructuring Officer ("CRO") of the Debtor; and (b) provide additional personnel (the "Supporting Personnel") to assist the CRO and the Debtor. In further support of the Application, the Debtor respectfully

{00353380.3 / 1539-001 }

represents:

1. This Court has jurisdiction over this application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND

2. On December 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. No creditors' committee or trustee has been appointed in this case.

4. E. Gluck has been in the watch business for more than six decades, operating as a designer, importer and distributor of certain proprietary and licensed brands. Its proprietary anchor is Armitron, a longstanding name in the U.S. watch market, complemented by licensed fashion brands such as Anne Klein, Nine West, and others. At its peak, the company generated hundreds of millions of dollars in revenue by supplying a wide spectrum of U.S. retail partners, including mass merchants, department stores, mid-tier chains, off-price retailers and club stores. Beyond the domestic market, E. Gluck also built international distribution through third-party distributors and maintained a meaningful presence in travel retail, including duty-free and cruise channels.

5. E. Gluck's business model rested on a durable combination of long-term brand licenses, strong proprietary positioning, a broad and healthy SKU variety, high-quality

products and deep retail relationships, all supported by an in-house team capable of delivering design, production and distribution at scale. For many years, this mix created a stable and profitable foundation.

6. Yet, in recent years, management recognized that traditional watches were a mature, slow-growth category, increasingly pressured by shifts in consumer behavior and the rise of smart devices. To diversify and with the goal of positioning the company for future growth, E. Gluck acquired WITHit, a company specializing in reading accessories and smartwatch and wearable-tech accessories. The strategic goal was for WITHit to extend E. Gluck's reach into faster-growing product categories, leverage E. Gluck's retail distribution muscle and create a hedge against the long-term decline of conventional watch demand due to, among other reasons, the advent and increased market share of smart devices..

7. Unfortunately, the acquisition of WITHit did not deliver the benefits that management anticipated. The expectation was that smartwatch accessories, and the broader category of wearables, would provide a meaningful growth engine to offset the gradual decline in traditional watch demand. However, in practice, the category proved more fragmented, competitive and difficult to scale than projected. Integration challenges, overlapping costs and slower-than-expected consumer adoption all contributed to results that fell materially short of the original business forecasts. The end result was that not only were the anticipated synergies unrealized, but forecasted growth related to WITHit's legacy business failed to materialize such that sales even trended downward from pre-merger periods.

8. At the same time, external factors compounded the challenge. The COVID-19 pandemic disrupted supply chains, tightened retail ordering, and shifted consumer

demand patterns. Tariffs and freight costs spiked, further eroding already thin margins. Retail partners across channels became more aggressive in managing their own inventories, often leaning on suppliers to absorb costs and risks. Meanwhile, the traditional watch category faced mounting structural headwinds as smart devices captured a larger share of consumer attention and spending.

9. The cumulative effect is a company burdened by fixed costs and new obligations from the WITHit acquisition that are not offset by the anticipated increases in revenue, all while E. Gluck's core revenue and profitability have come under sustained pressure from macroeconomic shocks and long-term shifts in the consumer marketplace.

10. E. Gluck is seeking relief under Chapter 11 to reset its cost structure, shed unproductive obligations, and position its long-standing business for long-term stability. The Chapter 11 process will allow the company to exit the unfavorable service contracts associated with the WITHit acquisition, as well as unwind operational redundancies that never integrated cleanly with the core watch business. It will also enable E. Gluck to reject costly or underutilized leases and to restructure its Hong Kong operations into a smaller, more efficient presence that reflects the company's current sourcing needs. Further, Chapter 11 will give the company the ability to rightsize its workforce, eliminating duplicative roles and reducing fixed overhead that has become unsustainable relative to revenue, while preserving a material number of jobs into the future – a goal that is in jeopardy should E. Gluck not undertake this restructuring.

11. E. Gluck's foundations are strong and its goals are to preserve and reinforce those foundations that have served it well for decades. The company continues to hold valuable proprietary and licensed brands, including Armitron and Anne Klein, which remain trusted names in the U.S. watch

market. Its retail relationships span the full spectrum of distribution and its distribution partners continue to view E. Gluck as a reliable, creative and capable supplier. With burdensome contracts and unproductive costs behind it, the company will return to a variable-cost model in line with its revenue base, its financial profile will stabilize and a leaner but sustainable workforce will be protected. With a restructured balance sheet and operating model, E. Gluck will be positioned to compete effectively in today's challenging retail environment and to achieve sustainable profitability.

12. Additional information regarding E. Gluck's business, capital structure and the circumstances leading to this chapter 11 case is contained in the Declaration of Adam Gelnick Pursuant to Local Bankruptcy Rule 1007-2 (the "Gelnick Declaration") filed on the Petition Date.

## RETENTION OF COMETRICS

13. By this Application, the Debtor seeks to retain CoMetrics and Mr. Herwitz, as its CRO, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions of the Agreement, a copy of which is annexed as **Exhibit A** hereto. For the past several months, CoMetrics, and Mr. Herwitz as CRO, have played an integral role in the Debtor's efforts toward evaluating the Debtor's business and financial model and capital structure as well as the Debtor's pre-chapter 11 financial planning. The Debtor requires the services of CoMetrics, including Mr. Herwitz as CRO, to perform these restructuring services on its behalf during the administration of the Chapter 11 case as well. Some of the services it is anticipated CoMetrics would provide to the Debtor include, among others:

- Continuing to provide Mr. Herwitz in the role of CRO to the Debtor; requirements of the Court and assisting in such other

matters as management or counsel to the Debtor may request from time to time.
- Developing and monitoring rolling 13 week cash flows and weekly variance analysis.
- Continue to lead, motor and track the initiatives in accordance with the restructuring plan.
- Continue to conducting a comprehensive review of the company's financial position, operations, and organizational structure.
- Continue to lead all communications with the senior lender including borrowing requests, daily borrowing base and collateral calculations and submit daily borrowing bases.
- Provide the senior lender and parties in interest weekly analysis of actual verses forecasted sales, AR collections, AR dilution, disbursements, and availability in accordance with the DIP financing order provisions.
- Directly supervise the Company's accounting department.
- Provide on-site accounting and operations support.
- Provide on-site and off-site support for the Company to comply with its Management Services Agreement with WITHit Holdings LLC.
- Continue to lead the pricing strategy, markdown and funding strategy, advertising, margin requirements, compliance with the Vendor agreement with the Company's largest customer (Amazon).
- Continue to lead the liquidation and sell-off of inventory.
- Lead warehouse and distribution transitional processes to economic logistic platform and logistics metrics for requests of Stalking Horse and other buyers as requested.
- Continue to assess certain system processes and procedures.
- Continue to work with Licensors on payment plans and royalty reporting/compliance.
- Lead the process of preparing and coordinating due diligence materials for the advisors representing the minority members of WITHit Holdings LLC.
- Lead negotiations to monetize the Company's 51% interest in WITHit Holdings LLC for the benefit of the Estate.
- Assisting in the development and execution of a communication plan to ensure transparency and stakeholder engagement throughout the restructuring process and chapter 11 proceedings.
- Assisting the Company and its other advisors in

       connection with evaluation, negotiation, and consummation of any sale /investment transaction.
- Prepare all financial analysis as requested by outside professionals.
- Such other matters as may be mutually agreed between the Company and CoMetrics.

14. Consistent with the Office of the U.S. Trustee's protocol applicable to the retention of personnel to assist debtors under section 363 of the Bankruptcy Code (the "Jay Alix Protocol"), neither Mr. Herwitz nor the Supporting Personnel will act as a financial advisor retained under § 327 of the Bankruptcy Code, a claims agent or claims administrator appointed pursuant to 28 U.S.C. § 156(c), or an investor or acquirer in the chapter 11 case.

## No Duplication of Services

15. The Debtor expects that the services of CoMetrics will complement and not duplicate the services rendered by any other professionals retained by the Debtor. As set forth in the Declaration of Gary Herwitz, annexed hereto as **Exhibit B** (the "Herwitz Declaration"), CoMetrics understands that the Debtor has retained and may retain additional professionals during the term of CoMetrics' engagement and agrees to work cooperatively with such professionals to integrate all work conducted by such professionals. CoMetrics is providing distinct and specific financial advising and consulting services, and such services are not expected to duplicate those to be provided by any other consultants, legal advisors, or investment bankers.

## Compensation

16. The Debtor proposes that CoMetrics be employed in the chapter 11 case pursuant to § 363 of the Bankruptcy Code. Because CoMetrics is not being retained as a professional under §§ 327(a) and 328(a) of the Bankruptcy Code, CoMetrics does not intend to

{00353380.3 / 1539-001 }

apply to this Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court relating to "professionals." Instead, the fees and expenses incurred by CoMetrics in completion of the services it performs will be treated as administrative expenses of the Debtor's chapter 11 estate and paid by the Debtor in the ordinary course of business.

17. The Debtor and CoMetrics have agreed that CoMetrics will be compensated for the services of the CoMetrics personnel at their standard hourly rates. At present, CoMetrics' standard hourly rates are as follows: $650-$800 for partners, $450-$550 managing directors, and $300-$350 for associate professionals and analysts. These rates may be subject to adjustment from time to time.

18. To maintain transparency and to comply with the Jay Alix Protocol, CoMetrics will file reports of compensation earned, expenses incurred, and current personnel staffed on the chapter 11 case on a monthly basis (each a "Staffing Report" and collectively, the "Staffing Reports") with the Court and provide notice of such filing to the U.S. Trustee and counsel to any official committee appointed in the chapter 11 case (each a "Committee" and, with the U.S. Trustee, the "Staffing Report Notice Parties"). Such Staffing Reports will (a) summarize the time incurred and services provided to the Debtor, (b) identify by name and function the staff provided, and (c) itemize the expenses incurred. The first Staffing Report shall cover the period from the Petition Date until the end of the month in which the Proposed Order is entered and shall be submitted within thirty (30) days thereafter.

19. Because CoMetrics' time records do not ordinarily conform to a schedule of hourly rates for its professionals, the Debtor respectfully requests that: (i) CoMetrics' professionals not be required to keep time records on a "project category" basis and (ii) CoMetrics not be required to provide or conform to any schedule of hourly rates (other than set forth above herein). To the extent that CoMetrics' timekeeping process as described herein deviates from what would otherwise be required, the Debtor respectfully requests that this Court allow such deviations and waive any requirements to the contrary.

20. The Staffing Reports will be subject to review by the Court if an objection is filed by any of the Staffing Report Notice Parties and served on the Debtor, the Debtor's counsel, and CoMetrics within ten (10) days after the date each Staffing Report is filed and served (the "Objection Period"). The Debtor respectfully requests that it be authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by CoMetrics for fees and expenses incurred in connection with CoMetrics' retention. In the event an objection is filed and served during the Objection Period and not consensually resolved, the Debtor shall deduct an amount equal to the amount objected to from the next payment to Cometrics until such objection is resolved, either consensually or by Court order.

### Compensation Received by CoMetrics From the Debtor

21. During the 90-day period prior to the Petition Date, the Debtor paid CoMetrics $771,150 for professional services performed and expenses incurred. In addition, prior to the Petition Date, consistent with customary practices, the Debtor provided CoMetrics with an advance payment of $275,000. As of the Petition Date, the Debtor did not owe CoMetrics any amounts for services rendered prior to the Petition Date.

22. Pursuant to Bankruptcy Rule 2016(b), CoMetrics has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtor with another person, other than with the directors and consultants associated with CoMetrics as permitted under section 504(b)(1) of the Bankruptcy Code, or (b) any compensation another person has received or may receive from the Debtor. Other than as set forth above, there is no proposed arrangement between the Debtor and CoMetrics with respect to compensation to be paid in the chapter 11 case.

### Confidentiality and Indemnification

23. Under the Agreement, CoMetrics agrees to keep confidential information obtained from the Debtor in the performance of its duties, without prior consent of the Debtor.[1] Finally, the Agreement provides that the Debtor indemnify and hold harmless CoMetrics from any claims asserted arising out of the Agreement or the performance thereunder, unless caused by its willful misconduct or gross negligence.

24. The indemnification provisions contained in the Agreement (the "Indemnification Provisions") are customary and reasonable for CoMetrics and comparable firms providing financial advisory services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtor and CoMetrics at arm's length and in good faith. The provisions contained in the Agreement, viewed in conjunction with the other terms of CoMetrics' proposed retention, are reasonable and in the best interest of the Debtor, its estate,

---

[1] CoMetrics may disclose information that (a) is otherwise publicly known at the time of its disclosure and not through a breach of this agreement by CoMetrics; (b) is lawfully received by CoMetrics from a third party not bound in a confidential relationship to the Debtor; or (iii) is required to be disclosed pursuant to any applicable law, governmental rule or regulation, court order, subpoena or similar judicial or regulatory process.

{00353380.3 / 1539-001 }

and creditors in light of the fact that the Debtor requires CoMetrics' services to successfully reorganize.

25. Notwithstanding the foregoing, CoMetrics understands that the Indemnification Provisions shall apply only to such CoMetrics employees not serving in executive officer positions and that the indemnification of any persons serving as executive officers shall be on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable law, along with insurance coverage under the Debtor's directors and officers insurance policy. The indemnification terms herein supersede and replace any provision of the Agreement related to the indemnification of any executive officers.

26. The Debtor requests that with respect to CoMetrics and any persons not serving in executive officer positions, this Court approve the Indemnification Provisions as set forth in the Agreement, subject during the pendency of the chapter 11 case to the following modifications:

   a. Subject to the provisions of subparagraphs (b) and (c) below and except with respect to any officers provided by CoMetrics to the Debtor, the Debtor is authorized to indemnify, and shall indemnify, CoMetrics for any claims arising from, related to, or in connection with the services to be provided by CoMetrics as specified in the Application, but not for any claim arising from, related to, or in connection with CoMetrics' performance of any other services other than those in connection with the engagement, unless such services and indemnification therefor are approved by this Court; and

   b. The Debtor shall not have any obligation to indemnify Cometrics for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from Cometrics' gross negligence, willful misconduct, bad faith, or fraud, unless the Court determines that indemnification would be permissible pursuant to applicable law, or (ii) settled prior to a judicial determination as to Cometrics' gross negligence, willful misconduct, bad faith, or fraud, but determined by this Court, after notice and a hearing, to be a claim or expense for which Cometrics is not entitled to receive indemnity; and

    c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the chapter 11 case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the chapter 11 case, Cometrics believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification obligations under the Application, including, without limitation, the advancement of defense costs, Cometrics must file an application in this Court, and the Debtor may not pay any such amounts to Cometrics before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Cometrics for indemnification, and not as a provision limiting the duration of the Debtor's obligation to indemnify Cometrics. All parties in interest shall retain the right to object to any demand by Cometrics for indemnification.

27.     The Debtor submits that these services are necessary to implement the plan for maximizing asset values for the benefit of E. Gluck's creditors. The Debtor believes that CoMetrics is well qualified to render the services required by the estate.

### Disinterestedness of CoMetrics

28.     Upon information and belief, CoMetrics (a) does not represent and or hold any interest adverse to the Debtor's estate or its creditors in the matters upon which CoMetrics is to be engaged; and (b) has no connection with the Debtor, its creditors, or other parties-in-interest in the case, except as disclosed in the Herwitz Declaration.

29.     Although the Debtor is not seeking to retain Cometrics under § 327 of the Bankruptcy Code, Cometrics has performed the same conflict check it would perform if it were being retained under § 327. The results of the conflict check are set forth in the Herwitz Declaration, which discloses, among other things, any relationship that Mr. Herwitz, CoMetrics, or any individual Supporting Personnel has with the Debtor, its creditors, or other parties in interest. Based upon the Herwitz Declaration, the Debtor submits that CoMetrics is a

"disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

30. In addition, as set forth in the Herwitz Declaration, CoMetrics has conducted a review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, CoMetrics will supplement its disclosures to the Court.

## Basis for Relief

31. The Debtor submits that the retention of CoMetrics pursuant to §§ 105 and 363 of the Bankruptcy Code is proper. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under applicable case law, if a debtor's proposed use of the estate property is based on reasonable business judgment, such use should be approved. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

32. In addition, Courts in this and other districts have relied on § 363(b) to authorize debtors to retain management consultancy firms, including where a firm's personnel were expected to fill key officer roles and serve as chief restructuring officers. *See, e.g., In re*

*Enron Corp.*, Case No. 01-16034, 2006 WL 1030421, at *2 (Bankr. S.D.N.Y. Apr. 12, 2006) (noting that court authorized the debtors, under section 363(b), to retain a management consulting firm to provide a chief executive and chief restructuring officer and additional individuals to serve as additional personnel during the chapter 11 cases); *In re Ajubeo LLC*, Case No. 17-17924, 2017 WL 5466655, at *4 (Bankr. D. Col. Sept. 27, 2017) (approving retention of management consulting firm to provide a chief restructuring officer under section 363(b)); *In re Copenhaver, Inc.*, 506 B.R. 757, 764-65 (Bankr. C.D. Ill. 2014) (holding that the retention of a current director as consultant and chief restructuring officer under section 363(b) would be appropriate given the "unique and compelling circumstances" of the case, subject to modification of the court's oversight of the officers' fees); *In re Toisa Limited*, No. 17-10184 (Bankr. S.D.N.Y. Jan. 22, 2018) [ECF No. 458] (approving employment of a chief restructuring officer pursuant to § 363(b)); *accord In re Nine West Holdings, Inc.*, 588 B.R.678 (Bankr. S.D.N.Y 2018) (authorizing retention of CEO and supporting personnel under section 363(b) on the basis that such retention was similar to chief restructuring officer retentions routinely authorized under section 363(b)).

33. The Debtor has determined, in the exercise of its sound business judgement, that the size and complexity of its business requires them to employ a CRO and Supporting Personnel with the knowledge of the Debtor's industry and business, as well as experience with the chapter 11 process. Mr. Herwitz has extensive restructuring experience and the Supporting Personnel are well qualified and equipped to assist the CRO in his duties. The Debtor believes that engaging Mr. Herwitz as the CRO, as well as the other Supporting Personnel, will be in the best interests of all parties in interest in this chapter 11 case. The

Debtor is also mindful that Mr. Herwitz's retention and the support of CoMetrics is required under the Debtor's post-petition financing facility.

34. Additionally, § 105 of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), also provides this Court with the power to grant the relief requested herein.

35. This Court has authorized retention of interim corporate officers and other temporary employees on numerous occasions. See, e.g., *In re SVB Fin. Grp.*, Case No. 23-10367 (MG) [ECF No. 304] (Bankr. S.D.N.Y. June 2, 2023); *In re Urban Commons 2 West LLC*, Case No. 22-11509 (PB) [ECF No. 60] (Bankr. S.D.N.Y. Dec. 8, 2022); *In re GTT Commc'ns, Inc.*, Case No. 21-11880 (MEW) [ECF No. 212] (Bankr. S.D.N.Y. Dec. 14, 2021); *In re Centric Brands Inc.*, Case No. 20-22637 (SHL) [ECF No. 334] (Bankr. S.D.N.Y. Jul. 2, 2020). Based upon the foregoing, the Debtor submits that the retention of CoMetrics and the designation of Mr. Herwitz as CRO on the terms set forth herein and in the Agreement, is essential, appropriate and in the best interest of the Debtor's estate, creditors and other parties in interest and should be granted.

36. The Debtor requests that CoMetrics' retention, and Mr. Herwitz' designation as CRO, be made effective as of the Petition Date, to allow Mr. Herwitz to be compensated for the work performed for the Debtor before the Court's consideration and approval of this Application. The Debtor believes that no party in interest would be prejudiced by the granting of the Application as of the Petition Date, as provided in this Application, because Cometrics has provided and continues to provide valuable services to the Debtor's estate

during the interim period. Courts in this district routinely grant retention applications retroactively effective as of the Petition Date. *See In re Spirit Airlines, Inc., et al.*, Case No. 24-11988 (SHL) [ECF No. 275] (Bankr. S.D.N.Y. Dec. 19, 2024); *In re Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (SHL) [ECF No. 108] (Bankr. S.D.N.Y. Feb. 24, 2023); *In re Grupo Aeromexico, S.A.B. de C.V., et al.*, Case No. 20-11563 (SCC) [ECF No. 459] (Bankr. S.D.N.Y. Sept. 23, 2020); *In re LATAM Airlines Group S.A.*, Case No. 20-11254 (JLG) [ECF No. 426] (Bankr. S.D.N.Y. July 1, 2020). The Debtor submits that, under the circumstances, and to avoid irreparable harm to the Debtor's estate that may occur if CoMetrics is not immediately retained, retroactive approval to the Petition Date is warranted.

## Notice

37. Notice of this Application will be provided to the following parties (or their counsel): (a) the U.S. Trustee; (b) the Official Committee of Unsecured Creditors, if any (or if none, then to the Holders of the 20 Largest Unsecured Claims), (c) the DIP Lender; (d) the any other party that is entitled to notice under Local Rule 9013-1(b) or that has requested notice pursuant to Bankruptcy Rule 2002.

38. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that an order, in the form annexed hereto as **Exhibit C** be entered authorizing it to retain CoMetrics as its chief restructuring officer and financial advisor in these proceedings, *nunc pro tunc* to the Petition Date, in accordance with the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 17, 2025

> **E. Gluck Corporation**
> Debtor and Debtor-in-Possession
>
> By: */s/ Adam Gelnick*
> Adam Gelnick, its,
> Chief Financial Officer

Filed by:

**HALPERIN BATTAGLIA BENZIJA, LLP**

By: */s/ Julie Dyas Goldberg, Esq.*
Alan D. Halperin, Esq.
Julie Dyas Goldberg, Esq.
40 Wall Street, 37th Floor
New York, New York 10005
Phone: (212) 765-9100; Fax: (212) 765-0964
ahalperin@halperinlaw.net; jgoldberg@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor- in-Possession*