**Hearing Date and Time: February 4, 2026, at 10:00 a.m. ET**
**Cure Claim Bar Date: January 12, 2026, at 4:00 p.m. ET**

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esquire
Klara L. Bradbury, Esquire
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669
Telephone: (212) 471-1881
Email: wmsimkulak@duanemorris.com
Email: kbradbury@duanemorris.com

-and-

Catherine B. Heitzenrater, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: cheitzenrater@duanemorris.com
*Counsel for the Chubb Companies*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

| | |
|---|---|
| In re | : Chapter 11 |
| E. GLUCK CORPORATION, | : Case No.: 25-12683 (MG) |
| Tax I.D. No. 13-2907195 | |
| Debtor. | : |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

**THE CHUBB COMPANIES' (I) CURE CLAIM AND (II) LIMITED OBJECTION TO NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ESTABLISHMENT OF CURE CLAIMS BAR DATE FOR NON-DEBTOR COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

ACE American Insurance Company, Bankers Standard Insurance Company, Federal Insurance Company, and Great Northern Insurance Company (collectively and together with each of their U.S.-based affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this (i) cure claim and (ii) limited objection (the "Objection") to the *Notice Of Potential Assumption and Assignment of Executory Contracts And Unexpired Leases*

DM3\22280088.3

*and Establishment of Cure Claims Bar Date For Non-Debtor Counterparties To Executory Contracts And Unexpired Leases* [Docket No. 39, Exhibit D] (the "Cure Notice"),[1] and in support of the Objection respectfully state as follows:

## BACKGROUND

### A.    The Bankruptcy Case

1.       On December 1, 2025 (the "Petition Date"), E. Gluck Corporation (the "Debtor") filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.       The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.

3.       On December 22, 2025, the Court entered an order [Docket No. 39] (the "Bidding Procedures Order") approving the Debtor's request for establishment of bidding procedures and related matters in connection with the Debtor's *Motion for Orders (I) Scheduling Hearing to Consider (A) Sale of Substantially All of the Debtor's Assets, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers; and (B) Assumption and Assignment of Executory Contracts; (II) Scheduling Hearing to Consider Approval of (A) Break-Up Fee/Expense Reimbursement and (B) Bidding Procedures for the Conduct of an Auction and Entering Order Thereon; (III) Fixing a Cure Claims Bar Date With Respect to the Assumption and Assignment of Executory Contracts; (IV) Fixing Manner and Notice of Sale Hearing; (V) Authorizing the Debtor*

---

[1]       The Cure Notice is attached as Exhibit D to the Bidding Procedures Order (defined herein) filed as Docket No. 39. All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Bidding Procedures Order.

*to Sell Assets, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers; and (VI) Authorizing Assumption and Assignment of Executory Contracts* [Docket No. 8] (the "<u>Sale Motion</u>").

4.      The Bidding Procedures Order, *inter alia*, approved Bidding Procedures and assignment procedures (the "<u>Assignment Procedures</u>") in connection with the proposed Sale of substantially all of the Debtor's Assets to a Successful Bidder following an Auction.

5.      On December 23, 2025, pursuant to the Assignment Procedures, the Debtor caused copies of the Cure Notice to be served on the persons listed at Exhibit B to the Bid Procedures Order, which Cure Notice purports to list certain potentially executory contracts that the Debtor may seek to assume and assign in connection with any Sale together with proposed cure amounts for such contracts.

**B.      <u>The Insurance Program</u>**

6.      Prior to the Petition Date, the Chubb Companies issued certain insurance policies (together with any renewals, amendments, modifications, endorsements, and supplements, the "<u>Policies</u>") to the Debtor as a named insured.

7.      Pursuant to certain of the Policies (together with any related agreements, the "<u>Insurance Program</u>"), the Chubb Companies provide, *inter alia*, certain workers' compensation, international casualty, property, general liability, employment practices liability, automobile liability, errors and omissions, umbrella, and other insurance for specified policy periods, subject to certain limits, deductibles, retentions, exclusions, terms, and conditions, as more particularly described therein, and the Debtor, as the insured, is required to pay the Chubb Companies certain amounts including but not limited to insurance premiums (including audit premiums), deductibles, expenses, taxes, assessments, and surcharges, as more particularly described in the Insurance Program (the "<u>Obligations</u>").

DM3\22280088.3

8.      The Debtor's Obligations are payable over an extended period and are subject to future audits and adjustments.  In particular, pursuant to certain current Policies, the Debtor has at least three (3) future premium installments owed quarterly to the Chubb Companies, each in the amount of $19,809.00, plus related fees (the "Future Installments").

9.      In lines 5, 18, 19, and 22-27 of Exhibit B to the Cure Notice, the Debtor purports to reference certain Policies that could be part of the Insurance Program (the "Purported Chubb Contracts") but fails to identify specific Chubb Companies, policy numbers, and policy periods or otherwise provide meaningful notice of their intentions.

10.     The cure amount listed for the Purported Chubb Contracts is $0 in each instance.

## CURE CLAIM AND OBJECTION

11.     The Cure Notice requires non-debtor counterparties to executory contracts and unexpired leases to file cure claims with the Clerk of the Court, setting forth all claims and arrearages against the Debtor under the applicable executory contract or unexpired lease by January 12, 2026, at 4:00 p.m. (the "Cure Claims Bar Date").

12.     However, as further explained below, amounts continue to accrue under the Insurance Program, including, but not limited to the Future Installments, such that any cure amount in connection therewith must be evaluated at the time of assumption (*i.e.*, the closing of any Sale).

13.     In light of the foregoing, the Chubb Companies hereby assert a Cure Claim, and object to the Cure Notice on the grounds that (A) the Insurance Program must be assumed, if at all, as a whole, and in order to be entitled to any of the benefits under the Insurance Program, the Debtor and its successors must remain liable for the Obligations thereunder; and (B) the Cure Notice contains a $0.00 cure amount for each of the Purported Chubb Contracts, but amounts continue to accrue under the Insurance Program and any cure amount must be evaluated at the time of assumption (*i.e.*, the closing of any Sale).

4

A.      **The Insurance Program and the Obligations Thereunder are Indivisible.**

14.      The Insurance Program must be treated as a single program, and the rights and benefits under the Insurance Program are part of, and inseparable from, the balance of the thereof.

15.      The Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced in its entirety.   *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

16.      It is well-established that a party cannot seek to receive the benefits of a contract without being liable for the obligations thereunder.   *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and

5

quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.,* 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (internal citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

17.     Additionally, neither the Debtor nor this Court can rewrite the Insurance Program, but rather the Insurance Program must be enforced as written. *See, e.g., Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or

6

take away something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court").

18.     If the Purchaser seeks to continue to receive the benefits of the Insurance Program, including, but not limited to, the Purported Chubb Contracts, the Insurance Program must continue in its entirety, and the rights and benefits thereunder cannot be split from the obligations thereunder.

19.     Accordingly, the Purchaser must remain liable in full for all of the Obligations arising under the Insurance Program, regardless of when they arise.

**B.      The Cure Amounts Must Be Evaluated At The Time Of Assumption.**

20.     On the Cure Notice, despite failing to identify with sufficient specificity any Policies or related insurance agreements subject to potential assumption, the Debtor represents that there is no cure amount due on account of each of the Purported Chubb Contracts.

21.     As noted above, in order to assume any portion of the Insurance Program, the Debtor must assume the Insurance Program in its entirety.  Further, as more particularly described in the Insurance Program, the Debtor is required to pay the Obligations, and therefore, amounts may become due and owing under the Insurance Program either prior to or after the assumption thereof, including the Future Installments each of which shall become due and payable as of February 19, 2026, May 20, 2026, and August 19, 2026, respectively.

22.     The Chubb Companies also have contingent, unliquidated claims against the Debtor, given the nature of the Insurance Program and the Obligations.  By way of example and not limitation, premiums may be payable at audit under the terms of the Insurance Program, based upon factors as they exist throughout the coverage period. By way of further example, as insured claims develop, amounts payable in relation thereto arise at various points in time; so it is common

7

for amounts to arise in the future with respect to insured claims where the date of loss was prior to the Petition Date.

23.     The amount owed by the Debtor on account of the Obligations varies from day to day, and is subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtor and claims submitted to the Chubb Companies.

24.     Accordingly, any cure amount must be determined at the time of assumption and further, as a condition for the assumption the Insurance Program, the Purchaser must remain liable for all of the Debtor's obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Program including, without limitation, paying the Obligations as they become due.

25.     For this reason, it is improper for the Debtor to set a $0.00 cure amount with respect to the Purported Chubb Contracts.

## **RESERVATION OF RIGHTS**

26.     The Chubb Companies specifically reserve all of their rights with respect to the Sale and the Insurance Program and their right to assert additional objections to the Sale, the Cure Notice, and any proposed assumption and assignment of all or any portion of the Insurance Program.

WHEREFORE, the Chubb Companies hereby assert a Cure Claim and object to the Cure Notice on the bases set forth herein, and reserve their rights to assert any additional objections to the Sale, the Cure Notice and any other document related thereto, and to any proposed treatment of the Insurance Program in connection therewith.

Dated: January 12, 2026                           Respectfully submitted,

8

DM3\22280088.3

*/s/ Wendy M. Simkulak*
**DUANE MORRIS LLP**
Wendy M. Simkulak, Esquire
Klara L. Bradbury, Esquire
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669
Telephone: (212) 471-1881
Email: wmsimkulak@duanemorris.com
Email: kbradbury@duanemorris.com

-and-

Catherine B. Heitzenrater, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: cheitzenrater@duanemorris.com

*Counsel for the Chubb Companies*

DM3\22280088.3