**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X

In re:                                                           :    Chapter 11
                                                                 :
E. Gluck Corporation,                                            :    Case No. 25-12683 (MG)
                                                                 :
                                   Debtors.                      :
                                                                 :
------------------------------------------------------------------ X

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING, AND (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) AUTHORIZING THE USE OF CASH COLLATERAL; AND (V) GRANTING RELATED RELIEF**

Upon the *Motion for an Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Authorizing the Use of Cash Collateral; (V) Scheduling Final Hearing; and (VI) Granting Related Relief* [Docket No. 7] (the "DIP Motion") dated December 1, 2025, filed by E. Gluck Corporation (the "Debtor" or the "Borrower"), as debtor in possession in the above-referenced chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), initially seeking interim relief as granted in the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate*

*Protection; (III) Modifying the Automatic Stay; (IV) Authorizing the Use of Cash Collateral; (V) Scheduling Final Hearing; and (VI) Granting Related Relief* [Docket No. 22] (the "Interim Order") and the *Second Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Authorizing the Use of Cash Collateral; (V) Scheduling Final Hearing; and (VI) Granting Related Relief* [Docket No. 38] (the "Second Interim Order"), and now seeking entry of this final order (the "Final Order") authorizing the Debtor to, among other things:

(1)    Obtain postpetition financing pursuant to the terms and conditions of the Ratification and Amendment Agreement (as defined below) and this Final Order;

(2)    Enter into, on a final basis, the (a) Ratification and Amendment Agreement dated as of November 30, 2025, by and between the Borrower and Israel Discount Bank of New York (the "Lender"), in the form attached hereto as Exhibit A (the "Ratification and Amendment Agreement"), and (b) the DIP Loan Documents,[1] providing for, among other things: (x)   the extension of a senior secured, superpriority, priming debtor-in-possession asset-based revolving credit facility, in an amount of $29,000,000 subject to the borrowing base, permitted over-advance and the Approved Budget; (y) the conversion of Prepetition Obligations to DIP Obligations in an amount equal to any and all sums advanced by the Lender to the Debtor under the DIP Facility; and (z) the application of any payments or proceeds arising from the sale of the Debtor's assets first to the Prepetition Obligations until such Prepetition Obligations are paid and satisfied in full, and, second, to the DIP Obligations until such DIP Obligations are paid and satisfied in, as provided in the Ratification and Amendment Agreement;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Ratification and Amendment Agreement.

(3)     Obtain advances and other financial accommodations, on a final basis, as set forth in the Ratification and Amendment Agreement from the Lender, secured by perfected senior priority security interests in, and liens on, the DIP Collateral pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

(4)     Grant to the Lender allowed superpriority administrative expense claims, on final basis, in the Chapter 11 Case and any Successor Case (as defined below), in each case subject to the Carve Out (as defined below);

(5)     Authorizing, subject to the terms and restrictions set forth in the DIP Loan Documents and this Final Order, the Debtor to use the Prepetition Collateral (including Cash Collateral) and provide adequate protection to the Lender to the extent of any diminution in value of its interests in the Prepetition Collateral (including Cash Collateral), for any reason provided for under the Bankruptcy Code, including resulting from the imposition of the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay"), the Debtor's use, sale or lease of the Prepetition Collateral (including Cash Collateral), and, where applicable, the priming of their respective interests in the Prepetition Collateral (including Cash Collateral);

(6)     Use the proceeds of the DIP Loans in accordance with the Approved Budget, a copy of which is attached hereto as Exhibit B, the Ratification and Amendment Agreement, and this Final Order, and as otherwise provided in the Ratification and Amendment Agreement;

(7)     Modify the Automatic Stay solely to the extent necessary to implement and effectuate the terms of the Ratification and Amendment Agreement and this Final Order;

(8)     Grant to the Lender first priority perfected security interests in and liens on all DIP Collateral; and

(9)    Provide the Lender with adequate protection against the diminution in value of their interests in the Collateral in the form of replacement liens on the Collateral, superpriority administrative expense claims, prepetition interest payments, and reasonable and documented fees and expenses, pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364(d)(1).

The initial hearing on the DIP Motion having been held by this Court on December 2, 2025 the ("Interim Hearing"), the continued hearing on the DIP Motion having been held by this Court on December 22, 2025 (the "Second Interim Hearing"), and the final hearing on the DIP Motion having been held by this Court on January 14, 2026 (the "Final Hearing"), and upon the record made by the Debtor at the Interim Hearing, the Second Interim Hearing, and the Final Hearing, including the DIP Motion, the *Declaration of Adam Gelnick in Support of First Day Motions* [Docket No. 2] (the "First Day Declaration"), the Ratification and Amendment Agreement, the filings and pleadings in the Chapter 11 Case, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing, the Second Interim Hearing, and the Final Hearing; and appropriate notice of the DIP Motion, the relief requested therein, and the Final Hearing (the "Notice") was due and proper under the circumstances; and the Notice having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the opportunity for a hearing on the DIP Motion was appropriate and no other notice need be provided; and the Final Hearing having been held and concluded; and it appearing that granting the relief requested in the DIP Motion on a final basis is fair and reasonable and in the best interests of the Debtor, its estate (as defined under Section 541 of the Bankruptcy Code, the "Estate"), its creditors and other parties in interest, and is essential for the preservation of the value of the Debtor's assets; and all objections, if any, to the entry of this Final Order having been withdrawn,

resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor, **IT IS FOUND AND DETERMINED THAT**:

A.      **Petition Date**. On December 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

B.      **Disposition**.  The Motion is hereby granted on a final basis in accordance with and to the extent set forth in this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.      **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Venue for the Chapter 11 Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution.

D.      **Committee Formation**.  On December 23, 2025, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors ("Creditors' Committee") in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

E.      **Notice**. Notice of the Final Hearing and notice of DIP Motion has been provided by the Debtor to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Office of the United States Attorney for the Southern District of New York; (iii) the Internal Revenue Service; (iv) the Debtor's twenty (20) largest unsecured creditors (excluding insiders); (v) any parties that may hold liens against the Debtor's assets; and (vi)

counsel to the Lender, by telecopy, email, overnight courier and/or hand delivery. Under the circumstances, such notice of the Interim Hearing, the Second Interim Hearing, and the Final Hearing and the DIP Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c), and (d), and the Local Rules.

        F.      **Debtor's Stipulations**.

        (i)      Stipulations Regarding the Prepetition Financing.

        (1)    *Prepetition Loans*. Prior to the Petition Date, Lender made loans and advances and provided other financial accommodations pursuant to the Prepetition Credit Agreement and extended the Debtor the Loans and certain other financial accommodations. The Prepetition Credit Agreement is valid, binding and enforceable in accordance with its terms.

        (2)    *Prepetition Obligations*. As of the Petition Date, the Debtor was justly and lawfully indebted and liable to the Lender, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $26,720,670.13 in outstanding Loans made pursuant to and in accordance with the terms of the Prepetition Credit Agreement, plus accrued and unpaid interest, fees, expenses (including attorneys', accountants', appraisers' and financial advisors' fees, to the extent chargeable or reimbursable under the Prepetition Credit Agreement), charges and indemnities incurred in connection therewith (whether arising before, on or after the Petition Date, and, collectively, the "Prepetition Obligations"). The liens and security interests granted to the Lender with respect to the Prepetition Obligations (the "Prepetition Liens") are valid, binding, perfected and enforceable liens and security interests in the collateral and not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable nonbankruptcy law.

(3)      *Prepetition Liens*. As of the Petition Date, (i) the Prepetition Liens in the Collateral were and continue to be valid, binding, enforceable, non-avoidable and properly perfected, and were granted to, or for the benefit of, the Lender, as applicable, for fair consideration and reasonably equivalent value; (ii) the Prepetition Liens were senior in priority over any and all other liens on the Collateral, other than any lien over the assets of the Debtor senior by operation of law and solely to the extent such liens were valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date, including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b); (iii) the Prepetition Obligations constitute legal, valid, binding and non-avoidable obligations of the applicable Debtor enforceable in accordance with the terms of the applicable Prepetition Credit Agreement; (iv) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (v) the Debtor has no claims, objections, challenges, causes of action and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Lender or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Credit Agreement; and (vi) the Debtor waives, discharges and releases any right to challenge any of the Prepetition Loan Obligations, the priority of the Debtor's obligations thereunder and the validity, extent and priority of the Prepetition Liens securing the Prepetition Loan Obligations.

(4)    *Cash Collateral*. All cash, securities, cash equivalents and other property of the Debtor (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash proceeds of the Collateral (including cash on deposit in any account with any depository institution (collectively, the "Depository Institutions") as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Collateral) and all cash securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by such parties at the Depository Institutions were subject to rights of set-off and valid, perfected, enforceable liens under the applicable Prepetition Loan Documents and applicable law for the benefit of the Lender and are "cash collateral" of the Lender within the meaning of Bankruptcy Code section 363(a) ("Cash Collateral").

(ii)    Stipulations Regarding the DIP Financing.

1)    *Need for DIP Financing*. An immediate need exists for the Debtor to obtain funds from the DIP Loans and use Cash Collateral in order to continue operations, fund payroll and operating expenses, and to administer and preserve the value of the Estate pending the Final Hearing. The ability of the Debtor to finance its operations through the incurrence of the DIP Loans is vital to the preservation and maintenance of the going concern value of the Estate, to maximize the value of the Debtor's assets for the benefit of their creditors, and to avoid immediate and irreparable harm to the Debtor, its Estate, and its creditors.

2)    *Adequate Protection*. The Lender is entitled to receive adequate protection pursuant to sections 361, 363, and 364 of the Bankruptcy Code for any diminution in value of each of its respective interests in the Collateral. Providing the Lender with adequate protection is necessary to enable the Debtor to obtain the DIP Loans and to continue to operate its business to the benefit of its Estate and creditors.

3)      *No Credit Available on More Favorable Terms*. The Debtor has been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the Estate on more favorable terms and conditions than those provided in the Ratification and Amendment Agreement and this Final Order. The Debtor is unable to obtain credit for borrowed money without granting to the Lender the DIP Superpriority Claim (as defined below) and such other protections provided for herein.

4)      *Section 506(c) Waiver*. Upon entry of this Final Order, the Debtor shall be deemed to have waived the provisions of section 506(c) of the Bankruptcy Code as part of the DIP Loans. Further, no expenses of administration of the Chapter 11 Case or Successor Case shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Lender, and no consent shall be implied from any action, inaction or acquiescence by the Lender.

5)      *Use of Proceeds of the DIP Loans*. All proceeds of the DIP Loans (net of any amounts used to pay fees, costs and expenses under the Ratification and Amendment Agreement) shall be used, in each case in a manner consistent with the Approved Budget, the terms and conditions of the Ratification and Amendment Agreement, this Final Order and as otherwise provided by the Ratification and Amendment Agreement.

6)      *Effect of Reversal, Good Faith*. The Lender has indicated a willingness to provide financing to the Debtor in accordance with the Ratification and Amendment Agreement and this Final Order, and provided that the DIP Obligations, DIP Liens and other

protections granted by this Final Order and the DIP Loan Documents will not be affected by any subsequent reversal or modification of this Final Order as provided in section 364(e) of the Bankruptcy Code. The Lender has acted in good faith in agreeing to provide the DIP Loans approved by this Final Order.

7)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Loans and the Ratification and Amendment Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; the Ratification and Amendment Agreement were negotiated in good faith and at arms' length between the Debtor and the Lender; and the proceeds to be extended under the DIP Loans will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

8)    *Relief Essential; Best Interest; Good Cause*. Good cause has been shown for the relief requested in the DIP Motion (and as provided in this Final Order) and such relief is necessary, essential, and appropriate for the preservation of the Debtor's assets, business, and property. It is in the best interest of the Estate to be allowed to enter into the DIP Loans contemplated by the Ratification and Amendment Agreement.

9)    *Consent to Use of Cash Collateral*. The Lender has consented or is deemed to have consented to the Debtor's use of Cash Collateral and the other Collateral (solely in accordance with the terms of this Final Order, the DIP Documents, and the Approved Budget), and the Loan Parties' entry into the Ratification and Amendment Agreement

in accordance with and subject to the terms and conditions set forth in this Final Order and the DIP Documents.

10)     *Immediate Entry*. Sufficient cause exists for immediate entry of this Final Order pursuant to Local Rule 4001(b)(ii) and Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, based upon the foregoing findings, and upon consideration of the DIP Motion and the record made before this Court with respect to the DIP Motion, including the record created during the Final Hearing, and with the consent of the Debtor and the Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED AND DECREED**:

1.     **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the Ratification and Amendment Agreement. Any objections to the DIP Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  The use of Cash Collateral, on a final basis, is authorized subject to the terms of this Final Order.

2.     **Ratification and Amendment Agreement**. The Debtor is authorized and empowered, on a final basis, to execute and deliver the Ratification and Amendment Agreement and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the Ratification and Amendment Agreement, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the Ratification and Amendment Agreement and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the Ratification and Amendment Agreement.

3.      **Performance Under Ratification and Amendment Agreement**. The Debtor is hereby authorized, on a final basis, to perform all acts, grant liens, pay the principal, interest, fees, expenses and other amounts described in the Ratification and Amendment Agreement as such become due, including, without limitation, reasonable attorneys' fees and disbursements as provided for in the Ratification and Amendment Agreement.

4.      **Enforceable Obligations**. The Ratification and Amendment Agreement shall be enforceable against the Debtor, its Estate and any successors thereto and its creditors or representatives thereof, in accordance with its terms.

5.      **DIP Obligations**. Prepetition Obligations shall be converted on a dollar-for-dollar basis to DIP Obligations in an amount equal to any and all sums advanced by the Lender to the Debtor under the DIP Facility pursuant to the Ratification and Amendment Agreement; *provided, however*, that the Court may unwind, or partially unwind, after notice and hearing, the conversion of Prepetition Obligations to DIP Obligations, in the event that there is a timely and successful Challenge and/or a determination that such Prepetition Obligations were under secured as of the Petition Date, and, as a result of which, the conversion of Prepetition Obligations to DIP Obligations unduly advantaged the Lender.

6.      **Conditions Precedent**. The Lender shall have no obligation to make any loan or advance under the Ratification and Amendment Agreement unless the conditions precedent to making such loan or advance under the Ratification and Amendment Agreement have been satisfied in full or waived by the Lender in its sole discretion.

7.      **DIP Liens**. Effective immediately upon the entry of the Interim Order and confirmed by this Final Order, the Lender is hereby granted as collateral security for the DIP Obligations, first-priority postpetition security interests and liens (which shall immediately be

valid, binding, permanent, continuing, enforceable and non-avoidable) on all of the, real, personal and mixed property, whether now owned or hereafter acquired of the Debtor, including, without limitation, any cash, any investments of such cash, deposit accounts, inventory, equipment, goods, general intangibles, accounts receivable, commercial tort claims, causes of action, insurance policies, other rights to payment, contracts, properties, plants, equipment, general intangibles, documents, instruments, interest in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, the proceeds of all of the foregoing, including the proceeds of the Debtor's claims and causes of action arising under sections 502(d), 544-549, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions") whether received through judgment, avoidance or otherwise, and all other Collateral (collectively, the "DIP Liens"). Subject to the Carve Out (as defined below), pursuant to section 364(c)(2) of the Bankruptcy Code, the Lender is hereby granted a first priority perfected security interest in and lien on all Collateral not otherwise subject to any valid, unavoidable, perfected liens and security interests in existence as of the Petition Date, or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b).

8.     **Priority**. The DIP Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the Collateral. Other than as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter granted in the Chapter 11 Case. The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of any of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Case"), or upon the dismissal of the Chapter 11 Case or Successor Case.

9.    **Perfection**. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, and any other liens provided herein, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or obtaining any lender's loss payable or other endorsements to any insurance policies related to the Collateral). Notwithstanding the foregoing, the Lender may, in its sole discretion, file such financing statements, recordings, deeds of trust, mortgages, notices of liens and other instruments and documents, and are hereby granted relief from the Automatic Stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, recordings, deeds of trust, mortgages, notices and other instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Case. The Debtor shall execute and deliver to the Lender all such financing statements, recordings, deeds of trust, mortgages, notices and other instruments and documents as the Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens, and other liens, granted pursuant hereto. The Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

10.    **Proceeds of Collateral**. The Lender shall be authorized to apply any payments or proceeds, first, to the Prepetition Obligations until such Prepetition Obligations are paid and satisfied in full, and, second, to the DIP Obligations until the DIP Obligations are paid

and satisfied in full; *provided, however*, that the Court may unwind, or partially unwind, after notice and hearing, the conversion of Prepetition Obligations to DIP Obligations, in the event that there is a timely and successful Challenge and/or a determination that such Prepetition Obligations were under secured as of the Petition Date, and, as a result of which, the conversion of Prepetition Obligations to DIP Obligations unduly advantaged the Lender.

11.  **Lender's Fees & Expenses**. Subject to the Approved Budget, the Debtor shall pay the Lender's reasonable and documented fees and expenses reimbursable under the Ratification and Amendment Agreement, whether incurred before or after the Petition Date, including, without limitation, reasonable and documented fees and disbursements of its counsel as set forth in the Ratification and Amendment Agreement. With respect to any such post-petition fees and expenses incurred, if professionals for the Lender deliver invoices in summary form (which shall not be required to include time entry detail and may be redacted for privileged information) to the Debtor and the U.S. Trustee, with a copy of such invoices delivered simultaneously to the Lender, and no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is five (5) business days after delivery of such invoices to the Debtor and the U.S. Trustee, the Debtor shall promptly pay, and the Lender is hereby authorized to make an advance under the Ratification and Amendment Agreement to timely pay, such DIP Fees and Expenses. If an objection to a professional's invoice is timely received from the Debtor or the U.S. Trustee, the Debtor shall promptly pay, and the Lender is authorized to make an advance under the Ratification and Amendment Agreement to timely pay, the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Lender shall not be required to comply with the

U.S. Trustee fee guidelines or otherwise be required to file a fee or retention application with the Court.

12.     **Superpriority Administrative Claim Status**. Subject to the Carve Out, all DIP Obligations, including for avoidance of doubt any and all Prepetition Obligations duly converted into DIP Obligations in accordance herewith, shall constitute an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") with priority in the Chapter 11 Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor or its Estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code and pursuant to any other provision of the Bankruptcy Code except as otherwise set forth herein, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof.

13.     **Authorization to Use Proceeds of DIP Loans**. Pursuant to the terms and conditions of this Final Order, the Ratification and Amendment Agreement and the other DIP Loan Documents, and in accordance with the Approved Budget, the Debtor is authorized to use the advances under the Ratification and Amendment Agreement during the period commencing immediately after the entry of the Final Order and terminating upon the occurrence of an Event of Default (as defined below) and the termination of the Ratification and Amendment Agreement in accordance with its terms and subject to the provisions hereof. As set forth in the Ratification and

Amendment Agreement, it shall be an Event of Default should (i) any Variance occur other than a Permitted Variance, and (ii) the Debtor fail to deliver timely any Approved Budget or any Variance Report.

14.      **Use of Cash Collateral**. Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with the Approved Budget, the Debtor is authorized to use Cash Collateral until the occurrence of an Event of Default. Nothing in this Final Order shall authorize the disposition of any assets of the Debtor outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by this Final Order and the DIP Loan Documents, and in accordance with the Approved Budget.

15.      **Adequate Protection Liens**. Until the Prepetition Obligations are paid in full, the Lender shall receive, pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364(d)(1), adequate protection against the diminution in value of its interests in the Collateral (the "Diminution in Value"), including but not limited to the following forms of adequate protection:

(a)      Adequate Protection Liens. The Lender is hereby granted valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens (the "Adequate Protection Liens") on, the Collateral including, without limitation, the Avoidance Proceeds;

(b)      Adequate Protection 507(b) Claims. The Lender is hereby granted allowed superpriority administrative expense claims as provided for in Bankruptcy Code section 507(b) in the amount of their respective Diminution in Value (the "Adequate Protection 507(b) Claims"), which Adequate Protection 507(b) Claims shall have recourse to and be payable from the Collateral;

(c)　　<u>Prepetition Interest Payments</u>. The Debtor is authorized and directed to provide the Lender with adequate protection in the form of cash payments covering any outstanding Prepetition Obligations after the entry of this Final Order, including interest equal to the applicable interest rate under the Ratification and Amendment Agreement with respect to DIP Obligations to the extent such Prepetition Obligations have not yet been rolled up into DIP Obligations and any fees and expenses owed by the Debtor in connection with such Prepetition Obligations, subject to the rights preserved in this Final Order.

16.　　**Carve Out**. The DIP Liens and the DIP Superpriority Claim are subordinate only to the following (the "<u>Carve Out</u>"): (i) until the issuance of a Carve Out Trigger Notice (which the Lender may only issue upon an Event of Default), statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any budget ("<u>Statutory Fees</u>") and any fees owed to the Clerk of Court; and (ii) following delivery of a Carve Out Trigger Notice, an aggregate amount not to exceed $100,000 (to be allocated pro rata among the beneficiaries of the Carve Out, *i.e.* retained professionals of the Debtor and Committee; provided that in the event a chapter 7 trustee is appointed, $25,000 shall first be allocated for reasonable fees and expenses of a chapter 7 trustee). The Carve Out shall exclude (other than the Investigation Budget Cap (as defined herein)) any fees and expenses incurred in connection with initiating or prosecuting any claims, causes of action, adversary proceedings, or other litigation against the Lender, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief invalidating, setting aside, disallowing, avoiding, challenging or subordinating, in whole or in part, the DIP Obligations, the DIP Liens, or the Prepetition Liens or preventing,

hindering or delaying, whether directly or indirectly, the Lender's assertion or enforcement of their liens or security interests or realization upon any Collateral, or prosecuting any Avoidance Actions against the Lender. The "Investigation Budget Cap" means a cap of $15,000.00 with respect to allowed fees incurred by the Creditors' Committee. Nothing herein shall be construed to obligate the Lender to pay any professional fees or to assure that the Debtor has sufficient funds on hand to pay any professional fees.

17.    **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor or shall affect the right of the Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Approved Budget.

18.    **Section 506(c) Claims**. Nothing contained in this Final Order shall be deemed a consent by the Lender to any charge, lien, assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise. Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or any Successor Case at any time may be charged against the Lender or any of its claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

19.    **Collateral Rights**. Unless the Lender has provided its prior written consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described below), and all commitments to lend have terminated: (a) the Debtor shall not seek entry, in this Chapter 11 Case or in any Successor Case, of any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral or the DIP Collateral and/or entitled to priority administrative status which is senior or *pari passu* to

those granted to the Lender pursuant to this Final Order, unless such credit or indebtedness is sufficient to pay all of the DIP Obligations in full in cash; and (b) the Debtor shall not consent to relief from the Automatic Stay by any person other than the Lender with respect to all or any portion of the Collateral without the express written consent of the Lender.

20.    **Disposition of Collateral**. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender or an order of this Court), except as provided in the Ratification and Amendment Agreement and this Final Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law; *provided, however*, that nothing herein shall prevent the Debtor from making sales in the ordinary course of business to the extent consistent with its prior practice and the Approved Budget.

21.    **Events of Default**. The occurrence of an "Event of Default" pursuant to the Ratification and Amendment Agreement shall constitute an event of default under this Final Order, unless expressly waived in writing in accordance with the consents required in the Ratification and Amendment Agreement (collectively, the "Events of Default"). As set forth in the Ratification and Amendment Agreement, the termination of CoMetrics as Debtor's Chief Restructuring Officer and financial advisor, or the limitation or modification of the powers of CoMetrics in such capacities, as set forth in the engagement letter, dated April 1, 2025, between CoMetrics and Debtor, including, without limitation, with respect to compensation and CoMetrics' ability to communicate freely and directly with Agent, shall constitute an immediate Event of Default under the DIP Credit Agreement and the other DIP Loan Documents. Furthermore, the failure of any of the DIP Milestones, including but not limited to the following, to occur is an Event of Default:

(a)    Not later than February 3, 2026, Debtor shall conduct an auction (the "Auction") in accordance with the Bid Procedures Order to select the highest and best bid(s) for the sale of all or substantially all of Debtor's assets in accordance with the Bid Procedures Order, which bid shall provide for, among other things, a minimum cash amount not less than the amount required to satisfy the Obligations owed to Agent and the Lenders in full in cash, and copies of which shall be provided to Agent;

(b)    Not later than February 6, 2026, the Debtors shall have obtained the entry of an order of the Bankruptcy Court, in form and substance satisfactory to Agent (the "Sale Order"), approving the Sale and providing that all cash proceeds generated by such Sale, less reasonable out of pocket fees, costs and expenses directly arising from, and required to be paid by the Loan Parties in connection with, such Sale, including without limitation, reasonable broker's and/or investment banker's fees incurred with respect to the Sale, in each case pursuant to a retention agreement in form and substance acceptable to Agent, shall be remitted to Agent for application against, and in permanent reduction of, the Obligations; and

(c)    Not later than February 13, 2026, the closing of the Bankruptcy Court-approved Sale shall have occurred.

22.    **Rights and Remedies Upon Event of Default**.

(a)    Any otherwise applicable Automatic Stay is hereby modified so that after the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, upon seven (7) business day's prior written notice of such occurrence (the "Remedies Notice Period"), in each case given by the Lender to Debtor, Debtor's counsel, counsel for the Official Committee of Unsecured Creditors, and the Office of the U.S. Trustee for the Southern District of New York, the Lender shall be entitled to exercise its rights and remedies with

respect to the Debtor in accordance with the Ratification and Amendment Agreement. Nothing in this Final Order shall limit the ability of any party to immediately exercise rights and remedies with respect to any non-Debtor.

(b)     Notwithstanding the preceding paragraph, immediately following the giving of notice by the Lender of the occurrence of an Event of Default: (i) the Debtor shall continue to deliver and cause the delivery of the proceeds of Collateral to the Lender as provided in the Ratification and Amendment Agreement and this Final Order; (ii) the Lender shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the Ratification and Amendment Agreement; (iii) the Debtor shall have no right to use any of such proceeds other than towards the satisfaction of the Obligations and the Carve Out; and (iv) any obligation otherwise imposed on the Lender to provide any loan or advance to the Debtor pursuant to the Ratification and Amendment Agreement shall immediately be suspended. Following the giving of notice by the Lender of the occurrence of an Event of Default, the Debtor or other party in interest shall be entitled to an emergency hearing before this Court. If the Debtor or other party in interest does not contest the right of the Lender to exercise its remedies within such five (5) business day period, or if an emergency hearing is held that does not result in the Court preventing the Lender from exercising its rights and remedies, then the Automatic Stay, as to the Lender, shall automatically terminate at the end of the Remedies Notice Period.

(c)     Nothing included herein shall prejudice, impair, or otherwise affect the Lender's rights to seek any other or supplemental relief in respect of the Lender's rights, as provided in the Ratification and Amendment Agreement.

23.     **Proofs of Claim**. The Lender will not be required to file proofs of claim in the Chapter 11 Case or any Successor Case.

24.     **Good Faith Under Section 364(e) of the Bankruptcy Code.** The Lender has acted in good faith in connection with negotiating the Ratification and Amendment Agreement, and extending credit under the DIP Loans, and its reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this or any other Court, the Lender is entitled to all the benefits and protections provided in section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any advances made pursuant to this Final Order or the liens or priority authorized or created hereby. The DIP Superpriority Claim, along with the liens and protections granted to the Lender hereunder arising prior to the effective date of such reversal, modification, amendment or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Superpriority Claim. Since the loans made pursuant to the Ratification and Amendment Agreement are made in reliance on this Final Order, the obligations owed to the Lender prior to the effective date of any reversal or modification of this Final Order cannot, as a result of any subsequent order in the Chapter 11 Case or in any Successor Case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Final Order and/or the Ratification and Amendment Agreement.

25.     **Binding Effect.** The provisions of this Final Order shall be binding upon and inure to the benefit of the Lender, the Debtor and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of

the Debtor or with respect to the property of the Estate of the Debtor) whether in the Chapter 11

Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

26.    **No Waiver.** The failure of the Lender to seek relief or otherwise exercise

their rights and remedies under the Ratification and Amendment Agreement, the DIP Loans, this

Final Order or otherwise, as applicable, shall not constitute a waiver of the Lender's rights

hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Final Order

is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise

impair the Lender under the Bankruptcy Code or under non-bankruptcy law, including without

limitation, the rights of the Lender to (i) request conversion of the Chapter 11 Case to a case under

chapter 7, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case,

or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of

reorganization or liquidation or (iii) exercise any of the rights, claims or privileges (whether legal,

equitable or otherwise) the Lender may have pursuant to this Final Order, the Ratification and

Amendment Agreement, or applicable law. Nothing in this Final Order shall interfere with the

rights of any party with respect to any non-Debtor.

27.    **No Third Party Rights.** Except as explicitly provided for herein, this Final

Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, or incidental beneficiary.

28.    **No Marshaling**. The Lender shall not be subject to the equitable doctrine

of "marshaling" or any other similar doctrine with respect to any of the Collateral.

29.    **Section 552(b)**. In light of the Lender's agreement to subordinate its liens

and superpriority claims to the Carve Out the Lender is entitled to all of the rights and benefits of

section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply
with respect to proceeds, product, offspring or profits of any of the Collateral.

30.     **Amendment**. The Lender, in its sole discretion, may amend, supplement or
otherwise modify, or agree to a waiver or consent in respect of, any provision of the Ratification
and Amendment Agreement.

31.     **Challenges**.

(a)     The Debtor's acknowledgments, stipulations and releases set forth
in paragraph D of this Final Order (collectively, the "Stipulations") shall be binding on the Debtor,
its Estate and their respective representatives, successors and assigns in all circumstances. The
Stipulations contained in this Final Order shall be binding upon all other parties in interest and all
of their respective successors and assigns, including any chapter 7 or chapter 11 trustee (a
"Trustee") and any statutory or non-statutory committees appointed or formed in the Chapter 11
Case, including the Creditors' Committee, and any other person or entity acting or seeking to act
on behalf of the Estate in all circumstances and for all purposes, unless the Creditors' Committee,
if any, or any other party in interest (including any Trustee), in each case, having sought, by
motion, and been granted standing, has duly and timely filed an adversary proceeding or contested
matter (each, a "Challenge") challenging the validity, perfection, enforceability, allowability,
priority or extent of the obligations in respect of the Prepetition Credit Agreement or otherwise
asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of
action, objections, contests or defenses against the Lender in connection with any matter related
to the Prepetition Credit Agreement (collectively, the "Claims and Defenses") by no later than
sixty (60) calendar days from the entry of the Interim Order (the "Challenge Deadline" and, such
period, the "Challenge Period"); *provided, further*, that any Trustee appointed prior to the

expiration of the Challenge Period will have the longer of (x) the remaining Challenge Period and (y) thirty (30) days from the date of such Trustee's appointment to commence a Challenge, and the Challenge Period may be further extended with the consent of the party against whom the Challenge would be asserted without further order of the Court. Subject to the entry of the Final Order, the timely filing of a motion seeking standing to file a Challenge before the termination of the Challenge Period shall toll the Challenge Deadline only as to the party that timely filed such standing motion and only with respect to the specific Challenges identified in such standing motion until such motion is resolved or adjudicated by the Court. Any pleadings, including, but not limited to, the complaint, filed in any Challenge proceeding shall set forth with specificity the basis for such Challenge (and any Challenge not so specified prior to the Challenge Deadline shall be deemed forever waived, released and barred). The Court may fashion any appropriate remedy following a successful Challenge.

(b)     If no Challenge is timely and properly filed prior to the expiration of the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then without further order of this Court (x) the obligations in respect of the Prepetition Credit Agreement shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law), for all purposes in this Chapter 11 Case and any subsequent chapter 7 case; (y) the Prepetition Liens shall not be subject to any other or further Challenge, including, without limitation, any Claims and Defenses, which shall be deemed

26

to be forever waived and barred, and all parties in interest shall be enjoined from seeking to exercise the rights of the Estate, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period); and (z) the Stipulations shall be of full force and effect and forever binding upon the Estate and all creditors, interest holders and other parties in interest in this Chapter 11 Case and any Successor Case.

(c)    If any Challenge is timely filed prior to the expiration of the Challenge Period, (i) the Stipulations contained in this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Case, any other person or party in this case, including any Trustee, and any other person or entity acting or seeking to act on behalf of the Estate, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction, and (ii) any Claims and Defenses not brought in a timely filed Challenge shall be forever barred; *provided that*, if and to the extent any Challenges to a particular Stipulation or admission are withdrawn, denied or overruled by a final non-appealable order, such Stipulation also shall be binding on the Estate and all parties in interest. Nothing in this Final Order vests or confers on any person, including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtor or its Estate, including, without limitation, Challenges with respect to the Stipulations, and all rights to object to such standing are expressly reserved.

32.    **Survival of Final Order and Other Matters**. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered

(i) confirming any plan of reorganization or plan of liquidation in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or any Successor Case, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court. The terms and provisions of this Final Order, including the DIP Superpriority Claim and liens granted pursuant to this Final Order and the Ratification and Amendment Agreement, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Superpriority Claim and liens shall maintain their priority as provided by this Final Order until all the obligations of the Debtor to the Lender pursuant to the Ratification and Amendment Agreement have been indefeasibly paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the Ratification and Amendment Agreement which survive such discharge by their terms).

33.    **Inconsistency**. In the event of any inconsistency between the terms and conditions of the Ratification and Amendment Agreement and of this Final Order, the provisions of this Final Order shall govern and control.

34.    **Enforceability**. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

35.    **Objections Overruled**. All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled on a final basis.

36.    **No Waivers or Modification of Final Order**. The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the Lender and no such consent shall be implied by any other action, inaction or acquiescence of the Lender, subject to observance of its fiduciary duties.

Dated: New York, New York
         January 15, 2026

                              _____/s/Martin Glenn_____
                              **HONORABLE MARTIN GLENN**
                              **CHIEF UNITED STATES BANKRUPTCY JUDGE**