UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

**E. GLUCK CORPORATION,**
Tax I.D. No. 13-2907195,

               Chapter 11 Case
               Case No. 25-12683 (MG)

               Debtor.
-------------------------------------------------------------x

## DECLARATION OF DAVID KAUFTHAL IN SUPPORT OF THE MOTION FOR ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S NON-WITHIT ASSETS

STATE OF NEW YORK   )
                                 ) ss.:
COUNTY OF NEW YORK )

       David Kaufthal, pursuant to 28 U.S.C. § 1746, hereby declares that the following is true to the best of my knowledge, information and belief:

       1.     I am a Partner in the investment banking firm of East Wind Securities, LLC ("East Wind"), which maintains an office at 810 Seventh Avenue, 35th Floor, New York, New York 10019. I am familiar with the matters set forth herein, and make this declaration in support of the Debtor's *Motion to Sell Substantially All of its Non-WITHit Assets* contemporaneous with its Chapter 11 Petition [Docket No. 8] the ("Legacy Sale"). Capitalized terms used but not defined herein have the meanings ascribed to them in the motion to approve the Legacy Sale.

       2.     For the past several months, East Wind has been working with the Debtor to design and effectuate a transaction to maximize the value of the Debtor's assets. Though many structures were explored, ultimately, the professionals have determined that a sale under Section 363 of the Bankruptcy Code was likely to yield the best and highest results. Pre-petition, East Wind has worked with the Debtor's management and Chief Restructuring Officer CoMetrics Partners, LLC to structure the sale and canvas the marketplace for potential purchasers.

3. In the months leading up to the Petition Date, East Wind approached eleven (11) parties to potentially serve as stalking horse to the Legacy Sale. These targets were identified and considered as potential fits for market reasons, as well as for their ability to potentially take advantage of business synergies while not harming the Debtor's business from a competitive lens in the event they were not chosen as stalking horse. Ultimately, two (2) parties presented strong letters of intent and, finally, American Exchange (which has now formed an entity to effectuate the proposed transaction by the name of E. Gluck Holdings, LLC) surfaced as the leading bidder.

4. After the Debtor filed for relief under chapter 11 of the Bankruptcy Code and the Bankruptcy Court, East Wind fielded calls and emails from additional parties that expressed an interest in the Legacy Sale, always with the intent and goal of maximizing these assets for the benefit of the estate and creditors. Upon entry of the *Order Approving (A) Break-up Fee/Expense Reimbursement, (B) Bidding Procedures for the Conduct of an Auction, and (C) Fixing Manner and Notice of Sale Hearing and Cure Claims Bar Date for Non-Debtor Counterparties to Executory Contracts and Unexpired Leases* (the "Bid Procedures Order") [Docket No. 39], East Wind substantially increased the reach of its marketing of the Legacy Sale assets, and reached out to eighty-eight (88) parties that had been identified as potential matches.

5. By December 9, 2025, East Wind had converted the pre-petition data exchange platform into a standard virtual data room (the "VDR") in order to facilitate the exchange of information to prospective buyers. Ultimately, the reach of the marketing proved to be successful and a total of fourteen (14) prospective purchasers signed non-disclosure agreements ("NDAs") and were granted access to the information provided in the VDR.

6. Over the following weeks, East Wind followed up with all groups of prospective bidders – both those with NDAs and those without. Our team timely provided responses to all prospective bidder inquiries and made regular additions to the VDR. As would be

expected, the activity in the VDR contracted with the passage of time. As of approximately two weeks ago, five (5) parties remained in the VDR and East Wind again followed up with each to ensure all questions were answered and no additional diligence materials were outstanding.

7. Upon the appointment of the Official Committee of Unsecured Creditors, East Wind briefed the Committee's professionals on the process and interacted with their proposed financial advisor to ensure any additional targets (particularly in the Asian market sector) were covered. This process yielded execution of one final NDA.

8. Ultimately, no additional Qualified Bids were received. In my belief and based on my professional experience, no additional Qualified Bids were received because the stalking horse provides excellent value for the assets due to unique synergies with the Debtor's business. I believe the marketing process was fulsome and that the time was fully sufficient such that additional time would not have yielded a better result.

I DECLARE under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 2nd day of February, 2026.

                                                     */s/ David Kaufthal*
                                                   David Kaufthal