UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                :
                                                                     :          Chapter 11
E. GLUCK CORPORATION,                                                :
                                                                     :          Case No. 25-12683 (MG)
                          Debtor.                                    :
----------------------------------------------------------x

### ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S NON-WITHIT ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF

This matter having come before the Court on the Debtor's *Motion for Order Authorizing the Debtor to Sell Substantially All of Its Non-WITHit Assets, Free and Clear of All Liens, Claims and Encumbrances*, dated December 1, 2025 [Docket No. 8] (the "Sale Motion");[1] and this Court having entered the *Order Approving (A) Break-Up Fee/Expense Reimbursement, (B) Bidding Procedures for the Conduct of an Auction, and (C) Fixing Manner and Notice of Sale Hearing and Cure Claims Bar Date* on December 22, 2025 [Docket No. 39] (the "Bidding Procedures Order"); and the Auction having been scheduled to be conducted no later than two business days following the Bid Deadline in accordance with the Bidding Procedures Order; and the Bid Deadline being set for January 30, 2026, at 4:00 PM EST, and the stalking horse having been identified as the only Qualified Bid; and the Auction having been cancelled due to a lack of competing Qualified Bids by the Bid Deadline; and the stalking horse, E. Gluck Holdings, LLC ("EGH") having been designated as the Successful Bidder in accordance with the Bidding Procedures; and due, proper, timely, adequate and sufficient notice of the hearing (the "Sale Hearing") to approve the sale (the "Sale") of the Acquired Assets  to the Buyer (including,

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Asset Purchase Agreement or, if not defined in the Asset Purchase Agreement, the meanings ascribed to them in the Sale Motion.

without limitation, the assumption, assignment and sale of the Assumed Contracts to the Buyer) having been given, including, without limitation, to the Committee (as defined below) and the United States Trustee; and the Sale Hearing having been held on February 4, 2026; and the Court having reviewed and considered the Sale Motion and the objections thereto; and all objections to the relief requested in the Sale Motion having been resolved by the terms of this order (the "Sale Order") or having been otherwise overruled or withdrawn; and on the arguments of counsel made, and the evidence adduced, at the Sale Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and upon the record of the Sale Hearing and this chapter 11 case; and after due deliberation thereon; and good cause appearing therefor; it is

**FOUND, DETERMINED AND CONCLUDED THAT:**[2]

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).   Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.      The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, and Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, as amended (the "Local Rules").  The Sale constitutes a sale of property of the Debtor's estate outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

C.      Due, proper, timely, adequate and sufficient notice of the Sale Motion (including, without limitation, the assumption, assignment and sale of the Assigned Contracts to the Buyer) and the Sale Hearing has been provided in accordance with the Bidding Procedures Order, sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9013 and 9014, and Local Rules 2002-1, 6004-1, 6006-1, 9006-1 and 9013-1.  Such notice is good, sufficient and appropriate, and no other or further notice or service of the Sale Motion or the Sale Hearing is or shall be required, and a reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein was afforded to all interested parties.

D.      The Debtor is the sole and lawful owner of the Acquired Assets, as set forth in the Asset Purchase Agreement, and, upon entry of this Sale Order, has the legal power and authority to convey all of its right, title and interest therein and thereto.

E.      Upon entry of this Sale Order, the Debtor has (i) full power and authority to execute the Asset Purchase Agreement, the Transition Services Agreement (substantially in the form annexed hereto) and the other ancillary agreements, and the sale of the Acquired Assets has been duly and validly authorized by all necessary company action of the Debtor, as applicable, (ii) the necessary power and authority to consummate the sale of the Acquired Assets to Buyer, and (iii) taken all company action necessary to authorize and approve the Asset Purchase Agreement, and consummate the sale of the Acquired Assets to Buyer.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtor to close the sale in accordance with the terms and conditions of the Asset Purchase Agreement, provided, however, that the Debtor required the consent of AKWHP, LLP ("AKWHP") to assume the Anne Klein Trademark License Agreement (the "AKWHP License

Agreement"), entered into by and between the Debtor and AKWHP, and assign it to EGH in connection with the Sale.

F.      Sound business reasons exist for the sale of the Acquired Assets.  Among other things, the Debtor has shown an emergent need to consummate the Sale as soon as possible due to insufficient liquidity to continue the operation of its business as a going concern.  In the absence of the sale of the Acquired Assets, the Debtor will be forced to cease operations and liquidate its business.  Accordingly, the Debtor has shown good and sufficient business justification under sections 363(b) and (l) and 105(a) of the Bankruptcy Code for the sale of the Acquired Assets to Buyer.

G.      The sale process has been conducted fairly and openly in a manner reasonably calculated to produce the highest and best offer for the Acquired Assets under the circumstances and in compliance with the Bidding Procedures Order.  The Debtor, together with its advisors, conducted a thorough and adequate search for potential buyers for the Assets.  In addition, the Committee, together with its advisors, conducted an independent solicitation of potential buyers.

H.      Entry into the Asset Purchase Agreement and consummation of the sale of the Acquired Assets in accordance with the terms and conditions thereof, constitute the Debtor's exercise of sound business judgment and such acts are in the best interests of the Debtor, its estate, and all parties in interest, in that, without exclusion:

(i)     the Asset Purchase Agreement was negotiated, proposed and entered into in good faith, from arm's-length bargaining positions as between Seller and Buyer;

(ii)    Seller was free to deal with any other party interested in acquiring the Acquired Assets;

(iii)   the Debtor has provided for adequate notice and an opportunity to be heard in connection with the sale in its chapter 11 case; and

(iv)    Buyer is a third party unrelated to the Debtor and is not a mere continuation of the Debtor's business.

I.      The Purchase Price provided by Buyer for the Acquired Assets is the highest and

best offer received by the Debtor, is fair and reasonable, and constitutes reasonably equivalent

value and fair consideration for the Acquired Assets under the Bankruptcy Code and other

applicable law.

J.      The Debtor may sell the Acquired Assets free and clear of all Encumbrances

(other than Permitted Encumbrances) as contemplated by the Asset Purchase Agreement

because, with respect to each creditor asserting any Encumbrance, one or more of the standards

set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  There were no

objections by any holders of Encumbrances that have not been resolved by the terms of this Sale

Order, or otherwise overruled or withdrawn, and all such parties are deemed to have consented to

the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All payments of cash proceeds to

Israel Discount Bank of New York as agent for the Lenders ("Agent"), shall be subject to the

terms and conditions of the Final DIP Order (defined herein) and in the event of any conflict or

inconsistency with respect to the allocation and use of Sale proceeds following the Closing, the

Final DIP Order shall control. All payments to the Prepetition Obligations and DIP Obligations

(as defined in the Final DIP Order) shall be for the indefeasible and permanent application to the

Prepetition Obligations and DIP Obligations.

K.      The Asset Purchase Agreement was negotiated, and has been and is being

undertaken, by Seller and Buyer at arm's-length without collusion or fraud, and in good faith

within the meaning of section 363(m) of the Bankruptcy Code.  As a result of the foregoing, the

Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code.  Moreover, neither

the Debtor nor the Buyer engaged in any conduct that would cause or permit the Asset Purchase

Agreement, the consummation of the sale, or the assumption and assignment of the Assigned

Contracts, to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

L.    The transfer of the Data (as contemplated in Section 4.25 of the Asset Purchase Agreement) to Buyer is authorized under section 363 of the Bankruptcy Code and does not violate any applicable data protection or privacy laws.

M.    The Sale and the transfers contemplated by the Asset Purchase Agreement shall not be avoidable under sections 549, or 550 of the Bankruptcy Code or under applicable non-bankruptcy law and shall not be subject to recharacterization.

N.    As of Closing, Buyer will not be an "insider" or "affiliate" of the Debtor, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders will exist between Buyer and the Debtor.

O.    The sale of the Acquired Assets to Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest Buyer with all right, title, and interest of the Debtor in and to the Acquired Assets free and clear of all Encumbrances (other than Permitted Encumbrances), including, but not limited to, all claims arising under any theory of successor liability.

P.    The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign and sell the Assigned Contracts to Buyer in connection with the sale. Additionally, assumption, assignment and sale of the Assigned Contracts to Buyer is in the best interests of the Debtor, its estate, its creditors, and all parties in interest.  The Assigned Contracts being assumed, assigned and sold to Buyer are an integral part of the Acquired Assets being purchased by Buyer, and accordingly, such assumption, assignment, and sale is reasonable, and will enhance the value of the Debtor's estate.

Q.      Subject to the Closing and payment and satisfaction of any Cure Costs by Buyer

in accordance with the Asset Purchase Agreement and this Sale Order, the Debtor and Buyer

have, to the extent necessary, satisfied the requirements of the Bankruptcy Code, including,

without limitation, sections 365(b)(1)(A) and (B) and 365(f) of the Bankruptcy Code, in

connection with the sale and the assumption and assignment of the Assigned Contracts to Buyer.

In addition, Buyer has demonstrated adequate assurance of future performance with respect to

the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.  The

assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is

integral to the Asset Purchase Agreement and is in the best interests of the Debtor, its estate, its

creditors and other parties in interest, and represents the exercise of sound and prudent business

judgment by the Debtor.

R.      The Debtor has established that strong business reasons exist for selling the

Acquired Assets outside the ordinary course of business and outside a plan of reorganization.

The sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought

without the protections that a disclosure statement would afford.  The sale neither impermissibly

restructures the rights of Debtor's creditors nor impermissibly dictates a liquidating plan of

reorganization for the Debtor.

S.      Time is of the essence in consummating the Sale.  Accordingly, to maximize the

value of the Debtor's assets, it is essential that the sale of the Acquired Assets occur within the

time constraints set forth in the Asset Purchase Agreement.  Accordingly, there is cause to waive

the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

T.      Approval of the Asset Purchase Agreement and consummation of the sale in accordance with the terms and conditions thereof at this time, are in the best interests of the Debtor, its creditors, its estates, and all parties in interest.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      For the reasons stated on the record at the Sale Hearing the relief requested in the Sale Motion is granted in the manner and to the extent provided herein, and on the record of the Sale Hearing, and all transactions contemplated under the Asset Purchase Agreement are hereby approved.

2.      All objections concerning the Sale Motion are resolved in accordance with the terms of this Sale Order, and as set forth in the record of the Sale Hearing, and to the extent any such objection was not otherwise withdrawn, waived, or settled, it is hereby overruled and denied (including all reservations of rights or relief requested therein).

**Approval of the Asset Purchase Agreement and Sale of the Acquired Assets to Buyer.**

3.      The Asset Purchase Agreement in the form annexed to the Sale Motion and further attached hereto as Exhibit A, and the Sale to Buyer of the Acquired Assets, are all hereby approved and authorized in all respects pursuant to sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(a), 365(b), and 365(f) of the Bankruptcy Code.

4.      The Debtor is authorized and directed to take any and all actions necessary or appropriate to execute, perform, consummate, implement and close fully the Asset Purchase Agreement and all additional or ancillary documents or instruments that may be reasonably necessary or desirable to implement the Asset Purchase Agreement (including any and all amendments thereto), all in accordance with the Sale Motion, the Asset Purchase Agreement and this Sale Order.  Notwithstanding anything herein to the contrary, Seller and Buyer shall have no

obligation to proceed with the Closing of the Asset Purchase Agreement until all conditions

precedent to their respective obligations to do so as set forth in the Asset Purchase Agreement

have been satisfied or waived in accordance therewith.

5.      The consideration provided by Buyer for the Acquired Assets under the Asset

Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute

reasonably equivalent value and fair consideration under the Bankruptcy Code and any other

applicable law.  The sale may not be avoided, or costs or damages imposed on or awarded

against any party in interest in these bankruptcy cases under section 363(n), or any other

provision, of the Bankruptcy Code.

6.      Buyer is a buyer in good faith as that term is used in section 363(m) of the

Bankruptcy Code, and Buyer is entitled to all of the protections afforded by section 363(m) of

the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the sale shall not affect the validity of the sale (including the

assumption, assignment, and sale of any of the Assigned Contracts to Buyer), unless such

authorization is duly stayed pending such appeal.

## Transfer of the Acquired Assets

7.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, upon the Closing,

the Acquired Assets shall be sold, transferred, conveyed and assigned to the Buyer, and the

Buyer shall take title to and possession of the Acquired Assets, free and clear of (a) all

Encumbrances (other than Permitted Encumbrances), (b) any restriction on the use, voting,

transfer, receipt of income or other exercise of any attributes of ownership of the Acquired

Assets, and (c) any claim (as that term is defined in section 101(5) of the Bankruptcy Code),

whether arising prior to or subsequent to the commencement of the Debtor's chapter 11 case,

including any claim arising under any theory of successor liability.  Encumbrances (as defined in

the Asset Purchase Agreement), if any, on any Acquired Asset shall attach to the proceeds of the

Sale in the same order of priority and with the same validity, force and effect that such

Encumbrances had before the Sale, subject to any rights, claims and defenses of the Debtor or its

estate, as applicable, or as otherwise provided herein.

8.      Except as expressly provided in the Asset Purchase Agreement, this Sale Order

and the *Agreement Regarding The Consensual Assumption And Assignment Of The Trademark*

*License Agreement By And Among AKWHP, LLC, E. Gluck Holdings LLC and the Debtor* (the

"AKWHP Assumption and Assignment Agreement"), the Buyer shall not assume, acquire, or be

deemed to have assumed or acquired any Excluded Assets or Excluded Liabilities. Further, the

Buyer is not assuming, nor shall it or any affiliate of Buyer be in any way liable or responsible,

as a successor or otherwise, for, any liabilities, debts, or obligations of Seller in any way

whatsoever relating to or arising from Seller's ownership, possession or use of the Acquired

Assets prior to the consummation of the transactions contemplated by the Asset Purchase

Agreement, or any liabilities calculable by reference to Seller or any of its operations or the

Acquired Assets, or relating to continuing or other conditions existing on or prior to the Closing

Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give

rise to liability, successor liability or otherwise, against Buyer or any affiliate of Buyer.

Notwithstanding anything herein to the contrary, Buyer shall not be liable for any Excluded

Liabilities.

9.      From and after the Closing Date, Buyer shall assume and agrees to pay, perform

and otherwise discharge, the Assumed Liabilities, in accordance with the terms and conditions of

the Asset Purchase Agreement, with such assumption of liabilities constituting a portion of the

Purchase Price paid by Buyer for the Acquired Assets, and the Debtor shall be relieved of all

such Assumed Liabilities and have no further liability for such Assumed Liabilities.

### **Assumption and Assignment of Executory Contracts**

10.     The Debtor is hereby authorized and directed, pursuant to sections 365(a), 365(b)

and 365(f) of the Bankruptcy Code, to (i) assume and assign the Assigned Contracts to Buyer at

the time of and effective upon the Closing, free and clear of any and all Encumbrances (other

than Permitted Encumbrances), and (ii) execute and deliver to the Buyer such documents or

other instruments as may be necessary to transfer, convey, sell and assign to the Buyer, and

cause the Buyer to assume, such Assigned Contracts, all in accordance with the Asset Purchase

Agreement and this Sale Order.  Notwithstanding anything herein to the contrary: (i) the

Debtor's assumption of the AKWHP License Agreement and assignment to EGH shall be

subject to and as modified by the AKWHP Assumption and Assignment Agreement; and (ii) no

contract or lease that constitutes an Excluded Asset shall be assumed, assigned, transferred,

conveyed or sold to Buyer pursuant to this Sale Order.

11.     The Assigned Contracts shall be transferred to, and shall remain in full force and

effect for the benefit of, Buyer in accordance with their respective terms, notwithstanding any

provision in any such Assigned Contract (including any of the type described in section 365(f) of

the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Upon

the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be

fully and irrevocably vested with all right, title, privilege and interest of the Debtor in, to and

under the Assigned Contracts.

12.     Notwithstanding anything contained in this Sale Order to the contrary, (i) the

Debtor is expressly authorized to enter into the AKWHP Assumption and Assignment

Agreement (a copy of which is annexed hereto within Exhibit A), and (ii) express terms of the

Debtor's assumption and assignment of the AKWHP License Agreement to EGH are governed

by, and subject in all respects to, the AKWHP Assumption and Assignment Agreement.

13.     Consistent with the requirements of sections 365(b) and 365(f) of the Bankruptcy

Code, upon the Closing and payment and satisfaction by Buyer of the Cure Costs in respect of

the Assigned Contracts in accordance with the terms and conditions of the Asset Purchase

Agreement and, with respect to the AKWHP License Agreement, specifically, in accordance

with, and subject to, the terms and conditions of the AKWHP Assumption and Assignment

Agreement, and upon the Closing and such payment of the Cure Costs:

      a.   all defaults of the Debtor under such Assigned Contract existing as of the date
of Closing (without giving effect to any acceleration clauses or any default
provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code)
shall be deemed in all respects cured, and Buyer shall have no further liability
or obligation in respect of any such defaults (including, without limitation,
any liability to compensate any counterparty for any actual pecuniary loss to
such counterparty resulting from such defaults), except as may otherwise be
expressly agreed between Buyer and the applicable counterparty;

      b.   each counterparty to such Assigned Contract shall be forever barred, estopped,
and permanently enjoined from asserting against the Debtor, Buyer, or the
property of any of them, any default or claim of breach arising under such
Assigned Contract and existing as of the Closing Date, or, against Buyer, any
counterclaim, defense, setoff, recoupment or any other claim asserted or
assertable against the Debtor or its estate; and

c.  Buyer shall be deemed to be substituted for the Debtor as a party to each of
the Assigned Contracts and, with respect to the AKWHP License Agreement,
as amended by that certain *Agreement to Amend Trademark Licenses
Agreement* entered into by EGH and AKWHP (the "Amended Agreement"),
and the Debtor and its estate shall be relieved from any liability for breach of
any such Assigned Contract occurring after the Closing Date.

d.  The Cure Costs set forth in connection with each Assigned Contract are final
and binding upon the Debtor, Buyer, and each applicable counterparty, and no
counterparty shall be entitled to assert any additional cure amounts or other
pre-Closing defaults with respect to an Assigned Contract.

14.    Buyer has provided adequate assurance of its future performance under the
Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the
Bankruptcy Code.

15.    Notwithstanding anything herein to the contrary, the failure of the Debtor or
Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not
be a waiver of such terms or conditions, or of the right of the Debtor or Buyer, as the case may
be, to enforce every term and condition of such Assigned Contract.  There shall be no assignment
fees, increases or any other fees charged or chargeable to Buyer as a result of the assumption,
assignment and sale of the Assigned Contracts.  Any provision in any Assigned Contract that
prohibits or conditions the assignment of such contract, or allows the counterparty to such
contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify
any term or condition upon the assignment of such contract, constitutes an unenforceable anti-
assignment provision, and is void and of no force and effect.  The validity of the assumption,

assignment and sale of the Assigned Contracts to Buyer shall not be affected by any existing

dispute between the Debtor and any non-Debtor counterparty.  Any party that may have had the

right to consent to the assignment of its Assigned Contract is deemed and determined to have

consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

16.     Notwithstanding anything to the contrary in the Sale Motion, the Asset Purchase

Agreement, any lists of Assigned Contracts to be assumed and assigned and/or any notice of

assumption and/or assignment, this Sale Order, or any documents relating to any of the

foregoing: (a) nothing shall permit or otherwise effect a sale, an assignment or any other transfer

of (i) any insurance policies that have been issued by Federal Insurance Company  and/or any of

its U.S.-based affiliates and successors (collectively, the "Chubb Companies") to or that provide

coverage to the Debtors, and all agreements, documents or instruments relating thereto

(collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, proceeds, benefits, claims,

rights to payments and/or recoveries under such Chubb Insurance Contracts to the Buyer, unless

and until an agreement is reached between the Debtor, the Buyer and the Chubb Companies

and/or a further order is entered by this Court, at a subsequent hearing, or as submitted under

certification of counsel by agreement of the Debtor, the Buyer and the Chubb Companies, with

the rights of the parties fully preserved with respect to the terms thereof; (b) nothing shall alter,

modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (c) for

the avoidance of doubt, the Buyer is not, and shall not be deemed to be, an insured under any of

the Chubb Insurance Contracts; *provided, however*, that to the extent any claim with respect to

the Acquired Assets arises that is covered by the Chubb Insurance Contracts, the Debtor may

pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if

applicable, turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover"),

provided, further, however, that the Chubb Companies shall not have any duty to effectuate a

Proceed Turnover or liability related to a Proceed Turnover.

### Distribution of Sale Proceeds

17.     In accordance with the *Final Order (I) Authorizing the Debtor to (A) Obtain*

*Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority*

*Administrative Expense Claims; (II) Granting Adequate Protection; (III) Modifying the*

*Automatic Stay; (IV) Authorizing the Use of Cash Collateral; (V) Granting Related Relief*

[Docket No. 64] (the "Final DIP Order"), the Debtor is authorized to pay the sale proceeds, or

direct that the sale proceeds be paid, to the Agent pursuant to Sections 10 and 21(b) of the Final

DIP Order, which payment shall be for the indefeasible and permanent application to the

Prepetition Obligations and DIP Obligations (as defined in the Final DIP Order), subject only to

the Carve Out (as defined in the Final DIP Order). Notwithstanding anything to the contrary in

this Sale Order, the Asset Purchase Agreement or otherwise, on the Closing, the cash proceeds of

the Sale shall be shall be applied in accordance with the terms of Sections 10 and 21(b) of the

Final DIP Order and the DIP Loan Documents

### Limitations On Liability And Release Of Encumbrances

18.     No bulk sales law or any similar law of any state or other jurisdiction shall apply

in any way to the sale under the Asset Purchase Agreement.  No brokers were involved in

consummating the Sale, and no brokers' commissions are due to any person or entity in

connection with the Sale.

19.     Upon the Closing, and pursuant to the terms of the Asset Purchase Agreement and

the AKWHP Assumption and Assignment Agreement, (a) Seller is hereby authorized to

consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and

- 15 -

assignment of the Acquired Assets to Buyer free and clear of any and all Encumbrances (other than Permitted Encumbrances), and (b) except as otherwise expressly provided in the Asset Purchase Agreement, all Encumbrances (other than Permitted Encumbrances) shall be and hereby are released, terminated and discharged as to Buyer and the Acquired Assets.

20.     Upon the Closing, and except as otherwise expressly provided in the Asset Purchase Agreement and in the AKWHP Assumption and Assignment Agreement, Buyer shall not be liable for any claims against, and liabilities and obligations of, Debtor or any of the Debtor's predecessors or affiliates.  Without limiting the generality of the foregoing, (a) other than as may be specifically set forth in the Asset Purchase Agreement, in the AKWHP Assumption and Assignment Agreement or otherwise expressly agreed to by Buyer, Buyer shall have no liability or obligation (x) to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or any other payment to employees of the Debtor, or (y) in respect of any employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which Debtor may be a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), and (b) Buyer shall in no way be deemed a party to or assignee of any such employee agreement, plan or program, and all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against Buyer any claims arising from or relating to such employee benefit, agreement, plan or program.  For the avoidance of doubt, nothing in this Sale Order or the Asset Purchase Agreement obligates Buyer to hire any of Seller's employees, and Buyer shall make all employment decisions in its sole discretion based on its independent business judgment.

21.     Per Section 11.16 of the Asset Purchase Agreement, all claims arising under or in connection with the Asset Purchase Agreement and the transactions contemplated thereby shall be enforceable solely against the parties to the Asset Purchase Agreement and only to the extent provided therein, and no affiliate, member, manager, officer, or representative of Buyer shall have any liability in connection therewith.  Provided, however, that nothing in this Sale Order, the Asset Purchase Agreement, or this paragraph shall be construed to release, waive, impair, or limit any claims or causes of action that are property of the Debtor's estates, including claims against any current or former directors, officers, insiders, equity holders, or affiliates of the Debtor.

22.     Any and all notices, if any, required to be given to the Debtor's employees pursuant to the Worker Adjustment and Retraining Adjustment Act, or any similar federal or state law, shall be the sole responsibility and obligation of Debtor, and Buyer shall have no responsibility or liability therefor.

23.     Buyer shall not be deemed a successor of or to the Debtor or the Debtor's estate with respect to any Encumbrances against Debtor or the Acquired Assets, and Buyer shall not be liable in any way for any such Encumbrances (other than Permitted Encumbrances and as otherwise expressly provided for in the AKWHP Assumption and Assignment Agreement), including, without limitation, any that may be Excluded Liabilities or Excluded Assets.  Upon Closing, and subject to the AKWHP Assumption and Assignment Agreement, all creditors, employees and equity holders of the Debtor are permanently and forever barred, restrained and enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Buyer or the Acquired Assets on account of any of the Encumbrances (other than Permitted Encumbrances), Excluded Liabilities

or Excluded Assets, or (b) asserting any claims or enforcing remedies under any theory of successor liability, de facto merger, substantial continuity or similar theory.

24.     On the Closing Date and pursuant to the terms of the Asset Purchase Agreement and, with respect to the AKWHP License Agreement, the AKWHP Assumption and Assignment Agreement, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to Buyer.

25.     On the Closing Date, the Debtor is authorized to apply any and all funds from the Purchase Price in satisfaction of the claims of the DIP Lender (as defined in the Final DIP Order) under the Final Order Authorizing the Debtor to Obtain Postpetition Financing (the "Final DIP Order") [Docket No. 64], and such claims of the DIP Lender shall not be subject to further challenge by the Debtor's estate, creditors, or any parties-in-interest.  Nothing in this paragraph shall impair or modify the professional fee carve-out, wind-down budget, or other protections preserved under the Final DIP Order or any applicable cash collateral orders, which amounts shall be funded prior to any distribution on account of DIP or prepetition secured claims.

26.     This Sale Order is and shall be (a) effective as a determination that, upon Closing, all Encumbrances (other than Permitted Encumbrances and those expressly provided for in the AKWHP Assumption and Assignment Agreement) existing as to the Acquired Assets have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of

their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets conveyed to Buyer.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Encumbrances (other than Permitted Encumbrances and those expressly provided for in the AKWHP Assumption and Assignment Agreement) against the Acquired Assets from their records, official and otherwise.

27.    If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances (other than Permitted Encumbrances and those expressly provided for in the AKWHP Assumption and Assignment Agreement) on or in the Acquired Assets shall not have delivered to Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of such Encumbrances, and any other documents necessary for the purpose of documenting the release of all such Encumbrances which the person or entity has or may assert with respect to the Acquired Assets, Debtor and Buyer are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

28.    Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

29.    Any and all Acquired Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier, professional, contractor or employee of the Debtor shall be transferred to Buyer free and clear of all Encumbrances (other than Permitted

Encumbrances and those expressly provided for in the AKWHP Assumption and Assignment

Agreement).  All such vendors, suppliers, professional, contractors or employees are hereby

directed to turn over to Buyer any such Acquired Assets in their possession or control as of the

Closing Date.

30.     The Debtor shall provide a copy of the closing statement to the U.S. Trustee, the

Bankruptcy Court and counsel to the Official Committee of Unsecured Creditors within 14 days

of Closing;

31.     The Debtor shall disclose any disbursements undertaken at the Closing in the

relevant monthly operating report.

### Further Assurances

32.     The Debtor is hereby authorized to take all such actions and execute and deliver

to the Buyer such other and further agreements and documents as shall be necessary to

consummate and give effect to the Asset Purchase Agreement and the transactions contemplated

thereby without further order of the Court.

33.     From and after the Closing, the Debtor shall provide Buyer and its

representative's reasonable access to, and copies of, the books and records relating to the

Acquired Assets and the Assigned Contracts, and shall reasonably cooperate with Buyer in

connection with any post-closing matters relating thereto.

### Additional Provisions

34.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects

upon all administrative expense claimants, creditors and equity security holders of the Debtor, all

counterparties to the Assigned Contracts, all successors and assigns of the Debtors and their

affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries

appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and none of the Asset Purchase Agreement, nor any transactions contemplated thereby, shall be subject to rejection or avoidance under any circumstances.

35.    The Asset Purchase Agreement and ancillary agreements may be modified, amended, or supplemented by the parties thereto, in a writing signed by Seller and Buyer, and in accordance with the terms thereof, without further order of the Court, after consultation with the Committee, provided that any such modification, amendment or supplement is filed of record with the Court and notice is provided to those persons who have requested notice pursuant to Bankruptcy Rule 2002 with respect to material modifications, amendments or supplements.

36.    Nothing contained in any order entered in the Debtor's chapter 11 case subsequent to entry of this Sale Order, nor in any chapter 11 plan confirmed in the Debtor's chapter 11 case, shall conflict with or derogate from the provisions of the Asset Purchase Agreement, the AKWHP Assumption and Assignment Agreement, or the terms of this Sale Order.

37.    This Sale Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) and 6006(d), and any other provision of the Bankruptcy Code, Bankruptcy Rules or Local Rules (if any), shall not apply, is expressly lifted, and this Sale Order is immediately effective and enforceable.

38.    The provisions of this Sale Order are nonseverable and mutually dependent.

39.    The failure specifically to include or refer to any particular provision of the Asset Purchase Agreement or any ancillary documents in this Sale Order shall not diminish or impair the effectiveness of such provision.

40.    In the event of any inconsistency between this Sale Order, on the one hand, and the Asset Purchase Agreement, on the other hand, the terms of this Sale Order shall control.

41.    The Court retains jurisdiction to:  (a) interpret, implement and enforce the terms and provisions of this Sale Order (including any injunctive relief provided in this Sale Order) and the terms of the Asset Purchase Agreement, all amendments, modification or supplements thereto, and any waivers and consents thereunder; (b) protect Buyer, or any of the Acquired Assets, from and against any of the Encumbrances or purported enforcement thereof; (c) compel delivery of all Acquired Assets to Buyer; and (d) resolve any disputes arising under or related to the Asset Purchase Agreement or the transactions contemplated thereunder or thereby, or Buyer's peaceful possession, use and enjoyment of the Acquired Assets.

42.    For the avoidance of doubt, but for paragraph 24, which supersedes this paragraph, nothing in this Sale Order, the Asset Purchase Agreement, or any ancillary agreement shall impair, waive, release, enjoin, estop, or otherwise prejudice the rights of the Committee, any chapter 7 trustee, or any estate representative with standing to investigate, assert, object to, challenge, or pursue any claims or causes of action of the Debtor's estates, including without limitation: (i) avoidance actions under chapter 5 of the Bankruptcy Code; (ii) claims for recharacterization, equitable subordination, or disallowance; (iii) claims against current or former directors, officers, insiders, equity holders, lenders, professionals, or the Buyer; and (iv) any claims based on fraud, breach of fiduciary duty, aiding and abetting, unjust enrichment, or similar theories.

43.    But for paragraph 24, which supersedes this paragraph, to the extent any lien or claim payable from sale proceeds is timely disputed by the Committee or another party with standing, the Debtor shall segregate and escrow the disputed amount pending final resolution by

- 22 -

agreement or final order, and no distribution of such escrowed proceeds shall occur prior to such resolution.

44.    Nothing in this Sale Order shall be deemed an admission by Buyer with respect to any liability, wrongdoing, or successor liability, and this Sale Order shall not be admissible against Buyer in any other proceeding except to enforce its terms.**IT IS SO ORDERED.**

**IT IS SO ORDERED.**

Dated:  February 4, 2026
      New York, New York

_____**/s/ Martin Glenn**_____
MARTIN GLENN
Chief United States Bankruptcy Judge