**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>E. GLUCK CORPORATION,<br><br>                  Debtor. | Chapter 11 Case<br>Case No. 25-12683 (MG) |

**STIPULATION, AGREEMENT, AND ORDER GRANTING MORGAN STANLEY
BANK, N.A. RELIEF FROM THE AUTOMATIC STAY PURSUANT TO
11 U.S.C. § 362(D) AND BANKRUPTCY RULE 4001(a)**

This stipulation and proposed order (the "Stipulation and Order") is entered into by E. Gluck Corporation, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") and Morgan Stanley Bank, N.A. ("MSB"). The Debtor and MSB collectively are referred to as the "Parties," and each, as a "Party." The Parties hereby stipulate and agree as follows:

**RECITALS**

A. On December 4, 2013, the Debtor and MSB entered into that certain Portfolio Loan Account Agreement (the "PLA Agreement"). Pursuant to the terms of the PLA Agreement, MSB agreed to make a demand loan facility available to the Debtor (the "Loan Facility"), which is secured by securities accounts (collectively, the "Collateral Accounts"), and the Debtor agreed to pay MSB pursuant to the terms set forth therein.

B. On March 6, 2017, the PLA Agreement was amended, restated, and superseded by that certain Liquidity Access Line Application and Agreements ("LAL Agreement") and Liquidity Access Line Terms and Conditions (the "LAL Terms" and, together with the LAL Agreement, the "Loan Agreement"),[1] which govern the terms of the Loan Facility (loan number ending in 263).

---

[1] Capitalized terms used but not defined in this Stipulation and Order have the meanings given in the Loan Agreement.

C.      On December 1, 2025, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

D.      As of April 15, 2026, MSB was owed $750,000.00 under the Loan Facility, and the securities in the Collateral Accounts had a value of approximately $798,436.76.  Interest on the Loan Facility accrues daily, and the value of the Collateral Accounts changes on a daily basis.

E.      Pursuant to the Loan Agreement, in order to secure payment or performance of the obligations under the Loan Facility, the Debtor granted to MSB a first priority lien on and security interest in certain assets, including, *inter alia*, the Collateral Accounts and certain investment property maintained in the Collateral Account, described more fully therein (the "Collateral").  The Collateral Accounts include the following securities brokerage accounts maintained with Morgan Stanley Smith Barney LLC: (i) account ending in 538, (ii) account ending in 989, and (iii) account ending in 988.

F.      Additionally, pursuant to the Loan Agreement, the Debtor authorized MSB to take actions necessary to obtain control of the Collateral and perfect its security interest therein. LAL Terms § 12.

G.      MSB has a perfected security interest in the Collateral pursuant to section 9-314 of the Uniform Commercial Code because MSB maintains control of the Collateral.  *See* U.C.C. §§ 9-314(a) ("A security interest in investment property, deposit accounts, letter-of-credit rights, electronic chattel paper, or electronic documents may be perfected by control of the collateral under Section 7-106, 9-104, 9-105, 9-106, or 9-107."); 9-106(a) ("A person has control of a certificated security, uncertificated security, or security entitlement as provided in Section 8-

106."); 8-106(d) ("A purchaser has 'control' of a security entitlement if: (1) the purchaser becomes the entitlement holder . . . .").

H.      The Loan Facility is a demand facility; the Loan Agreement states: "Borrower further acknowledges and agrees that, except as expressly provided in Section 1(E), the Liquidity Access Line is a demand line of credit and Bank may at any time, in its sole discretion and without cause, demand that Borrower immediately repay any and all outstanding LAL Obligations in whole or in part, whereupon Borrower shall be obligated to repay immediately all such LAL Obligations, even if no Stated Event has occurred." [2] LAL Terms § 1.B.

I.      The Loan Agreement further states: "Borrower agrees to pay upon demand all of Bank's fees, costs and expenses, including Bank's reasonable attorneys' fees and Bank's legal expenses incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of the LAL Agreement and the Loan Documents."  LAL Terms § 9.A.

J.      The Loan Agreement further states: "Except as expressly provided in Section 1(E), Bank may at any time, at its option and in its sole discretion, terminate the Liquidity Access Line by providing notice to Borrower in accordance with the LAL Agreement."[3]  LAL Terms § 13.A.

K.      Therefore, pursuant to the Loan Agreement, MSB is entitled to terminate the Loan Facility, declare any and all amounts owing thereunder immediately due and payable, and exercise its rights and remedies with respect to the Collateral Accounts.

L.      Payment of the Loan Facility through the liquidation of securities constituting Collateral will stop interest from accruing on the Loan Facility.  Accordingly, the Debtor believes in its business judgment that it is in the best interest of the estate to consent to the modification of

---

[2]  Section 1E of the LAL Terms is not applicable because it applies only if the borrower is an individual or common law trust.

[3]  Section 1E of the LAL Terms is not applicable because it applies only if the borrower is an individual or common law trust.

the automatic stay imposed by Section 362(a) of the Bankruptcy Code, to the extent necessary, to permit MSB to exercise its rights under the Loan Agreement, including its rights to (i) liquidate securities constituting Collateral to the extent necessary to repay the Loan Facility in full, (ii) apply the proceeds to the Loan Facility in satisfaction of the amounts owed, including interest, reasonable attorneys' fees,[4] and expenses, (iii) terminate the Loan Facility, and (iv) promptly release any excess Collateral to the Debtor.

M.      The Parties have agreed, subject to approval of the Bankruptcy Court, to modify the automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, subject to the terms and conditions set forth below.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT HEREBY IS STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THE UNDERSIGNED, AND UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

1.      The recitals set forth above are incorporated by reference as if set forth at length herein. The Parties agree that each of the recitals is true and correct.

2.      The Stipulation and Order shall have no force or effect unless and until approved by the Bankruptcy Court (the "Stipulation Effective Date").

3.      As of the Stipulation Effective Date, the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be, and hereby is, modified, to the extent necessary, to permit MSB to exercise its rights under the Loan Agreement, including its rights to (i) liquidate securities constituting Collateral to the extent necessary to repay the Loan Facility in full, (ii) apply the proceeds of such liquidation to the Loan Facility in satisfaction of the amounts owed, including

---

[4]  As of April 30, 2026, MSB has incurred legal fees of approximately $10,000.00, and such fees continue to accrue.

principal, accrued interest, reasonable attorneys' fees, and expenses, (iii) terminate the Loan Facility, and (iv) promptly release any excess Collateral to the Debtor.

4.      MSB shall provide an accounting to the Debtor of the amounts MSB asserts are owed for reasonable attorneys' fees and expenses.  The Debtor, in consultation with the Official Committee of Unsecured Creditors of E. Gluck Corporation (the "Committee"), shall have five (5) business days to respond to MSB as to the reasonableness of such amounts.  If the Debtor does not object, MSB shall apply such amounts to the Loan Facility as contemplated.  If the Debtor objects, then MSB, the Debtor and the Committee shall confer in good faith in an attempt to resolve the objection and/or shall seek further relief from this Court, if necessary.

5.      Nothing in this Stipulation and Order shall constitute a waiver, release, or compromise of any claims, causes of action, or defenses that the Debtor, the Committee, or any successor trustee may have against MSB or any of its affiliates, including, without limitation, any claims or causes of action arising under sections 502, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code, or any applicable state law equivalents.

6.      Notwithstanding Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Stipulation and Order are immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Stipulation and Order.

- 6 -

Dated:  May 6, 2026

REED SMITH LLP                                    HALPERIN BATTAGLIA BENZIJA, LLP

By:    */s/ Louis A. Curcio*                         By:    */s/ Julie Dyas Goldberg*
     Louis A. Curcio                                      Julie Dyas Goldberg
     599 Lexington Avenue, Floor 22            40 Wall Street, 37th Floor
     New York, New York 10022                    New York, NY 10005
     Telephone:  (212) 521-5400                   Telephone:  (212) 765-9100
     Facsimile:  (212) 521-5450                    Email:  jgoldberg@halperinlaw.net
     Email:  lcurcio@reedsmith.com

*Counsel to Morgan Stanley Bank, N.A.*              *Counsel to the Debtor*

**SO ORDERED**

Dated: May 7, 2026
New York, New York

     **/s/Martin Glenn**
     THE HONORABLE MARTIN GLENN
     CHIEF UNITED STATES BANKRUPTCY JUDGE