UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:

E. GLUCK CORPORATION,

Debtor.

-----------------------------------------------------------------x

Chapter 11 Case

Case No. 25-12683 (MG)

**JOINT RESPONSE OF THE DEBTOR AND OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE LIMITED OBJECTION OF THE CHUBB
COMPANIES TO THE COMBINED DISCLOSURE STATEMENT AND JOINT
LIQUIDATING PLAN OF E. GLUCK CORPORATION**

The Debtor and the Official Committee of Unsecured Creditors (the "Committee") of E.

Gluck Corporation (collectively with the Debtor, the "Responding Parties") by and through their

undersigned counsel, hereby file this response (the "Response") to the Limited Objection of the

Chubb Companies to the Combined Disclosure Statement and Joint Liquidating Plan of E. Gluck

Corporation [Docket No. 165] (the "Objection"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The Objection seeks to impose obligations on the Debtor's estate and the proposed

Liquidating Trust that are neither warranted by the Bankruptcy Code nor supported by the facts of

this case. A central flaw in the Limited Objection is its implicit premise that the Debtor's fully

paid insurance policies are executory contracts that must be assumed in their entirety (together

with all purported Obligations[1]) or rejected. That premise is flawed as a matter of law.

2.      The insurance policies at issue are fully prepaid and/or have been cancelled, and

the only claims made policy that is still in its present term, a directors and officers liability policy

(the "D&O Policy"), has likewise been fully prepaid. Accordingly, there are no material

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan
(as defined herein) or the Objection, as applicable.

10367910

obligations of the Debtor or its estate remaining under any of the policies. Under well-established Second Circuit law, fully paid insurance policies are not executory contracts. Rather, they constitute property of the estate under section 541(a)(1) of the Bankruptcy Code and, pursuant to the Combined Disclosure Statement and Joint Liquidating Plan [Docket No. 122] (the "Plan"), vest in the Liquidating Trust as a matter of course upon the Effective Date.

3.      That said, the Responding Parties recognizes that certain of the Chubb Companies' concerns may appropriately be addressed through clarifying language in the Plan and the proposed Confirmation Order (the "Confirmation Order"). To that end, the Responding Parties have no objection to including customary insurance-neutrality provisions that resolve any valid concerns. What the Responding Parties cannot accept, however, is the Chubb Companies' demand that the Liquidating Trust "assume" the entirety of a purported "Insurance Program" that is not an executory contract nor one integrated program. Such a proposal is inconsistent with the requirements under the law and the Chubb Companies' own prior stipulation[2], approved by this Court, addressing single policies as opposed to one collective "Insurance Program."

## LEGAL ARGUMENT

### I.    Fully Paid Insurance Policies Are Not Executory Contracts

4.      The Objection rests on the assumption that the Debtor must "assume" the Insurance Program—with all attendant Obligations—in order to retain the benefits of its insurance policies. This assumption is legally unfounded. Courts have consistently held that fully paid insurance policies are not executory contracts subject to assumption or rejection under section 365 of the Bankruptcy Code.

---

[2] See Stipulation AND Order Permitting Chubb Companies to Cancel Policies [Docket No. 136]

10367910

5.      Under Section 365 of the Bankruptcy Code, an executory contract is defined as "a contract under which the obligation of both the bankrupt and the other party to the contract are **so far unperformed** that the failure of either to complete performance would constitute a material breach excusing the performance of the other". *Countryman, Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. R. 439, 460 (1973); *In re Teligent, Inc.*, 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001). Applying that standard, courts within the Second Circuit have repeatedly held that fully paid insurance policies are not executory contracts, even where the insured retains ongoing obligations such as providing notice, cooperating in the defense of claims, or otherwise complying with policy conditions, because the insured's failure to perform those obligations does not excuse the insurer from its duty to provide coverage. *Am. Safety Indemnity Co. v. Vanderveer Estates Holding, LLC (In re Vanderveer Estates Holding, LLC)*, 328 B.R. 18 (Bankr. E.D.N.Y. 2005) (prepaid insurance policies are not executory contracts and the failure of an insured to perform continuing obligations would not excuse the insurer from being required to perform); *In re Grace Indus., Inc.,* 341 B.R. 399 (Bankr. E.D.N.Y. 2006), *aff'd as modified sub nom. Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275 (E.D.N.Y. 2009) (Where an insured debtor has paid the initial premium in full, and the policy period has expired, the liability insurance policy is not an executory contract under the Bankruptcy Code despite continuing obligations on the part of the insured; thus insured's failure to perform continuing obligations does not excuse the insurer from performing, but gives rise to an unsecured claim by the insurer for damages for breach of the policy); *In re Ames Dep't Stores, Inc.*, No. 93 CIV. 4014 (KMW), 1995 WL 311764, at *3 (S.D.N.Y. May 18, 1995). Put differently, courts interpreting Section 365 have made it clear that the debtor's payment of the initial policy premium constitutes substantial compliance with its contractual obligation.

6.      The converse is equally true. Insurance policies have found to be executory most commonly where material obligations remain outstanding on both sides of the contract, and where

10367910

the insured remains obligated to pay ongoing premiums while the insurer remains obligated to provide continuing coverage. *See In re Conseco, Inc*., 330 B.R. 673, 685-86 (Bankr. N.D. Ill. 2005). That circumstance is plainly absent here. The policies at issue were fully prepaid.

7.      Indeed, the Chubb Companies' own objection confirms the flaw in their position. They purport to reserve the right to object if the Debtor later seeks to reject the Policies as executory contracts, while simultaneously insisting that the Liquidating Trust must assume those same Policies. These positions cannot be reconciled. If the Policies are executory, they may be assumed or rejected under section 365. If, as controlling Second Circuit authority establishes, they are not executory, then section 365 imposes no assumption, cure, or adequate assurance obligations whatsoever. Chubb cannot invoke section 365 as both a sword and a shield.

8.      Therefore, because the premiums for the D&O Policy and the other insurance policies at issue have been paid in full, those policies are properly characterized as property of the Estate under section 541(a)(1) of the Bankruptcy Code, rather than executory contracts subject to assumption or rejection under section 365. Accordingly, the Plan's general rejection provision set forth in Article VI.F does not apply to these policies, and they will remain assets of the Estate that vest in the Liquidating Trust pursuant to the Plan without the need for assumption or rejection. Nothing in the Plan or the Confirmation Order creates new contractual obligations under the Insurance Policies, transfers liabilities that otherwise do not exist, or requires the Liquidating Trust to assume obligations beyond those imposed by the applicable law.

## II.    The Chubb Companies' Rights to Assert Administrative and Unsecured Claims are Protected by the Plan

9.      The Chubb Companies request language providing that they may continue to administer, handle, defend, settle, and pay covered claims in the ordinary course pursuant to the terms of the applicable Insurance Policies and non-bankruptcy law. The Responding Parties do not object to clarifying that the Chubb Companies may continue to administer covered claims in

4

10367910

accordance with the terms of the applicable Insurance Policies and applicable non-bankruptcy law. The Responding Parties cannot agree, however, to language that would effectively deem liabilities arising under the Insurance Policies to constitute administrative expense claims or otherwise require that such claims be paid in the ordinary course regardless of their status under the Bankruptcy Code. The Chubb Companies are at liberty to assert any administrative claim that they believe they hold as any other creditor is similarly entitled, subject to the Responding Parties' rights to object to those claims.

10.     Whether a claim is entitled to administrative expense priority is determined by section 503(b) of the Bankruptcy Code and cannot be expanded by agreement or confirmation order. Under well-established Second Circuit law, a claim qualifies as an administrative expense only if it "(1) arises from a transaction between the creditor and the debtor-in-possession, and (2) directly and substantially benefits the debtor-in-possession in the operation of its business." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc*., 789 F.2d 98, 101 (2d Cir. 1986); *Argonaut Ins. Co. v. Nw. Airlines, Inc.,* 1995 WL 311764, at *3 (S.D.N.Y. May 17, 1995). Where, as here, the insurance policies were issued prepetition, if obligations arising under those policies do not arise from a postpetition transaction with the debtor-in-possession, they do not satisfy the requirements of section 503(b). *Id.* ("any post-petition expansion of coverage, however, would not be undertaken as a result of a post-petition agreement for the benefit of the estate, but rather because it would be in [the insurance company]'s own best interest to defend claims, consequently, should not be afforded administrative expense priority").

11.     Likewise, workers' compensation claims arising from prepetition injuries are not administrative expense claims merely because they are administered or paid after the petition date. Courts have consistently held that such claims arise on the date of the employee's injury, not on the date benefits become payable. *See In re Johns-Manville Corp.*, 57 B.R. 680, 690 (Bankr.

5

10367910

S.D.N.Y. 1986); *In re Chateaugay Corp.*, 177 B.R. 176, 181 (S.D.N.Y. 1995); *In re Olga Coal Co.*, 194 B.R. 741, 746-47 (Bankr. S.D.N.Y. 1996); *In re Lull Corp.*, 162 B.R. 234, 240-41 (Bankr. D. Minn. 1993). Accordingly, the mere fact that the Chubb Companies may continue to administer or pay such claims post-confirmation should not alter their priority or entitle them to payment in the ordinary course as administrative expenses. Notwithstanding, as noted above, if the Chubb Companies believe they hold an administrative expense claim they are not precluded by the Plan from asserting it, subject to objections and a determination of the Court.

### III.   Any Valid Concerns of the Chubb Companies' Can Be Addressed in the Confirmation Order

12.     The Responding Parties hereby propose inclusion of the following provision in the proposed Confirmation Order to address any valid concerns of the Chubb Companies:

> **Insurance Policies**. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall be deemed to prohibit the following: (I) claimants with valid workers' compensation claims or direct action claims against a Chubb Company under applicable non-bankruptcy law from proceeding with their claims against the Chubb Companies, and not from the Liquidation Trust or estate assets; and/or (II) a Chubb Company from administering, handling, defending, settling, and/or paying, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Chubb Company under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article XI of the Plan (and any corresponding paragraph of this Confirmation Order).

13.     With the addition of this clarifying provision in the proposed Confirmation Order, the Chubb Companies are treated appropriately under the Plan.

### CONCLUSION

14.     Accordingly, the Responding Parties respectfully request that the Court overrule the Chubb Companies' Objection and include the proposed language in the Confirmation Order, together with such other and further relief as the Court deems just and proper.

10367910

Dated: July 9, 2026

Respectfully submitted,

**PORZIO, BROMBERG & NEWMAN, P.C.**

*/s/ Robert M Schechter*
Robert M Schechter, Esq.
Brett S. Moore, Esq.
Jenny Zhou, Esq. (admitted *pro hac vice*)
1675 Broadway, Suite 1810
New York, NY 10019
(646) 348-6723
        Email: RMSchechter@pbnlaw.com
        BSMoore@pbnlaw.com
        JZhou@pbnlaw.com

*Counsel to the Official Committee of Unsecured Creditor*

-and-

**HALPERIN BATTAGLIA BENZIJA, LLP**

By:     */s/ Julie Dyas Goldberg*
        Julie Dyas Goldberg
40 Wall Street, 37th Floor
New York, NY 10005
Telephone:  (212) 765-9100
Email:  jgoldberg@halperinlaw.net

*Counsel to the Debtor*

10367910