Minyao Wang, Esq.
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
140 Broadway, Suite 3100
New York, NY 10005
Tel.: (212) 232-1300
minyao.wang@lewisbrisbois.com

*Counsel for Sunstates Security, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------------X | |
| In re: | Chapter 11 |
| E. GLUCK CORPORATION, | Case No. 25-12683 (SAB) |
| Debtor. | |
| ------------------------------------------------------------X | |

**REPLY OF SUNSTATES SECURITY, LLC IN FURTHER SUPPORT OF ITS MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. §503(b)(1)(A) OF THE UNITED STATES BANKRUPTCY CODE**

Sunstates Security, LLC ("Sunstates"), by and through its undersigned counsel, respectfully submits this Reply[1] in further support of the *Motion of Sunstates Security, LLC for Allowance of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(1)(A) of the United States Bankruptcy Code* (the "Motion") [ECF No. 199] and in response to the *Liquidating Trustee's Objection to Motion of Sunstates Security, LLC for Allowance of Administrative Expense*, [ECF No. 202]. In support of this Reply, Sunstates relies on the Declaration of Alexander Fowler (the "Fowler Decl.") and the Declaration of Minyao Wang (the "Wang Decl."), filed contemporaneously herewith. For the reasons set forth in the Motion and/or herein, the Court should grant the Motion and award administrative

[1] By email dated October 26, 2026, the Court granted Sunstates an extension of time to file this Reply to October 26, 2026.

expenses in the amount of at least **$39,501.95** to Sunstates. In further support of the relief it seeks, Sunstates respectfully represents as follows:

1. The Liquidation Trustee has not come remotely close to negating the liability of the Debtor for the post-petition services that it received from Sunstates ***on a daily basis over a period of four months*** from December 1, 2025 to March 30, 2026.

2. The Liquidation Trustee acknowledges, as he must, that there was a long-standing contract for Sunstates and Watch Guard 24/7, LLC to provide on-site security services to E. Gluck at its corporate headquarters. The Liquidation Trustee further acknowledges (again as he must) that the service agreement was subject to termination only upon notice.

3. The service agreement between the parties was therefore an executory contract within the meaning of the Bankruptcy Code and subject to the application of the automatic stay under the Bankruptcy Code. *See* Motion ¶14; *In re Windstream Holdings, Inc.*, 634 F. Supp. 3d 99, 108 (S.D.N.Y. 2022), *aff'd*, 105 F.4th 488 (2d Cir. 2024) (collecting cases and observing that "[t]hese authorities are persuasive that an automatically renewing subscriber agreement, requiring notice of termination, would be an executory contract subject to the automatic stay.").

4. Tellingly, the Liquidation Trustee in his Opposition *entirely evades* the issue of the automatic stay and its decisive impact on Sunstates' attempts to terminate the parties' contract before the Petition Date. It is an elementary rule of federal litigation that a party's failure to respond to an argument constitutes a waiver. *See, e.g., Kouyate v. The Harvard Drug Grp. LLC,* No. 1:24-CV-6223-GHW, 2026 WL 2938805, at *8 (S.D.N.Y. Sept. 30, 2026) ("Generally, a party's failure to respond to an argument effectively concedes that argument.").

5. With this implicit but critical concession regarding the application of bankruptcy stay, the Liquidation Trustee cannot dispute that Sunstates' proposed termination of the contract between

the parties, scheduled to occur on December 2, 2025, could not and did not go into effect because the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on December 1, 2025. The Debtor chose to file for bankruptcy and one of the inevitable effects of that decision was Sunstates could not go through with its termination of the service contract, which was an executory contract. This is how chapter 11 is designed to work.

6. The Liquidation Trustee then blames an "apparent communication breakdown" at the Debtor for its acceptance of ***daily*** post-petition services from Sunstates over a period of ***four months***. Tellingly, the Liquidation Trustee does not describe with any particularity what the alleged breakdown was. Nor does the Liquidation Trustee explain under what legal or equitable principle a debtor's own alleged internal communications failures, even to the extent they actually occurred, would entitle it to receive ***free*** services during the pendency of a chapter 11 case for ***four months***.

7. More fundamentally, the Liquidation Trustee's primary excuse for nonpayment, which amounts to nothing more than "we did not know you were here and did work for us," does not pass the basic plausibility test. And the Liquidation Trustee makes no serious effort to come up with a remotely believable explanation for his after-the-fact rationalization.

8. As set forth in the Motion and the accompanying unpaid invoices, Sunstates showed up at the premises of the Debtor ***on a daily basis and in multiple shifts for four months***. The Liquidation Trustee does not even attempt to explain why the management of the Debtor would be so extraordinarily blind as to be unaware of the constant daily physical presence of outsiders in its business headquarters. This failure to offer a remotely believable reason is fatal to the candidly wild story that the Liquidating Trustee is attempting to peddle before the Court now in an attempt to evade payment.

9. Moreover, as Mr. Fowler states in his declaration, between the Petition Date and March 30, 2026, the Debtor's Director of Security, William Klein, received a **daily** automated email on behalf

of Sunstates concerning services rendered by Sunstates on that very day. Fowler Decl. ¶ 3 and Exhibit A. Publicly available information shows that Mr. Klein has impeccable industry credentials, including over twenty years with the New York City Police Department. *See* Wang Decl, Exhibit A. Under the circumstances, neither the Debtor or the Liquidation Trustee can deny with a straight face that the Debtor did not consent to or accept services from Sunstates.

10. In addition, electronic communications between John Rafferty (the founder of Watch Guard 24/7, LLC who is now employed by Sunstates) and Mr. Klein show that the Debtor willingly accepted post-petition pservices from Sunstates and did not terminate until March 30, 2026.

11. On February 12, 2026, Mr. Rafferty wrote to Mr. Klein stating that "I know you had mentioned **you are looking to terminate services** as soon as possible in relation to the bankruptcy. Can you please advise exactly what you are looking to do moving forward and we will loop in the proper people on our team in regard." Fowler Decl., Exhibit C (emphasis added).

12. This email shows that services were not terminated as of that date. Mr. Klein was merely ***looking*** to terminate services. Tellingly, Mr. Klein did not respond to this email. Fowler Decl., ¶ 5. If the Debtor really believed that services were already terminated or it no longer wanted Sunstates' daily on-site services going forward, Mr. Klein or another delegate would have responded promptly to that email stating the Debtor's position and politely asking Sunstates' security guards to stop coming.

13. Mr. Klein **knew** how to terminate services in plain English and he did so on March 30, 2026, with immediate effect, when he told Sunstates that the Debtor no longer needed on-site security services. When Mr. Klein ended the business relationship with Sunstates on behalf of the Debtor, he advised Mr. Rafferty that "Thank you, it was always a pleasure, sorry that things had to end." Fowler Decl., Exhibit B. If the Debtor truly believed that Sunstates had been in effect an uninvited guest for

the past four months at the headquarters of the Debtor, Mr. Klein would have said something entirely different.

14. The Liquidation Trustee relies heavily on *In re NeueHouse Inc.*, No. 25-11937 (MG), 2026 WL 2036242 (Bankr. S.D.N.Y. July 14, 2026). But that case is easily distinguishable. As Judge Glenn pointed out, the creditor's claim in *NeueHouse* did not arise post-petition because the credit card chargebacks at issue were for **pre-petition** transactions. *Id*. at *4. Moreover, *NeueHouse* was a chapter 7 case "and the Trustee was legally incapable of operating the business or processing transactions." *Id*. Here, in sharp contrast, the Debtor filed a chapter 11 case and was operating the debtor's business as usual under existing management, which was the hall-mark of the chapter 11 process as intended by Congress. The Liquidation Trustee's apples to orange comparison falls flat.

15. Moreover, there is a world of difference between not knowing about credit transactions conducted for a debtor and not knowing about security personnel showing up in its office ***every single day in multiple shifts over four months***. The Liquidation Trustee cannot plausibly deny that the Debtor knew it was getting services from Sunstates. The Debtor could have easily ended the services at any time (as it did on March 30, 2026 once the business need for the services evaporated.). The fact that it did not do so conclusively shows that the Debtor ***wanted*** the on-site security services provided by Sunstates. The Liquidation Trustee simply does not want to pay for it after the fact.

16. The Liquidation Trustee also entirely fails to rebut the value that Sunstates' security services conferred on the Debtor which was in the business of selling expensive and high-quality watches. If anything, the need for physical security only increased after the adverse publicity that came with a chapter 11 filing. The Liquidation Trustee claims that the Debtor's insurance carrier notified it that no on-site security was needed. But businesses and individuals routinely purchase security services beyond what an insurance policy requires.

17. The Liquidation Trustee then asserts in a highly conclusory fashion that the Debtor determined that no on-site security was needed going forward, yet provided absolutely no evidence to substantiate this claim. In light of the overall unbelievability of the excuse being proffered to evade payment, this unsupported claim strains credulity and in any event cannot override the Debtor's voluntary acceptance of Sunstates' services over four months.

18. The Court should reject the transparent after-the-fact litigation theory peddled by the Liquidation Trustee and grant Sunstates's Motion. In the alternative, the Court should order the Liquidation Trustee to produce key witnesses, including Mr. Klein and Adam Gelnick, for examinations under oath.

19. Sunstates' senior leadership believes that the opposition to its Motion is maintained in bad faith and must therefore reserve its right to seek fee-shifting.

Dated: New York, New York
October 26, 2026

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel to Sunstates Security, LLC*

By: /s/Minyao Wang
Minyao Wang, Esq.
140 Broadway, Suite 3100
New York, NY 10005
Tel.: (212) 232-1300
Minyao.Wang@lewisbrisbois.com
*Counsel for Sunstates Security, LLC*